UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

RICARDO DOLCINE,

                Plaintiff,

-against-

CITY OF NEW YORK; Police Officer RICHARD HANSON; Police Officer KERIN DONOHUE; Sergeant TOMEKA RUFFIN; Police Officer CHRISTOPHER DERENZE; and JOHN and JANE DOE 1 through 10,

                Defendants.
------------------------------------------------------------------x

**FIRST AMENDED COMPLAINT**

Jury Trial Demanded

17 CV 4835 (RWS)

## NATURE OF THE ACTION

1. This is an action to recover money damages and obtain equitable relief arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States, as well as Section 14-151 of the Administrative Code of the City of New York.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5. This Court has supplemental jurisdiction over the New York City claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. Plaintiff Ricardo Dolcine is a resident of New York County in the City and State of New York.

8. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

9. The individual defendants, at all times relevant herein, were officers, employees and agents of the NYPD. The individual defendants are sued in their individual and official capacities.

10. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

11. At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

12. At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

13. Plaintiff is a decorated military combat veteran and current NYPD officer.

14. Prior to the events described herein, plaintiff had no disciplinary record and bright career prospects.

15. Indeed, Mr. Dolcine was likely to reach detective or other superior rank.

16. Now, as a direct result of the defendants' discriminatory and unconstitutional conduct as described herein, Mr. Dolcine's career has been totally

derailed.

*Stop 1*

17.     On or about February 20, 2016, at approximately 10:00 a.m., plaintiff, who is African-American and was off-duty, was lawfully operating his Range Rover SUV in Manhattan, heading northbound on Lenox Avenue in the vicinity of 145th Street.

18.     Plaintiff's children, ages five and seven, were in the backseat of the vehicle.

19.     Defendants Hanson and Donohue pulled plaintiff over for no reason, impermissibly targeting him because he was a Black man driving an expensive car.

20.     Defendant Hanson approached plaintiff's window and began yelling at him to further lower the rear windows of the vehicle.

21.     Plaintiff, who had his NYPD ID card on display for the officers, complied with all directions and was extremely courteous and compliant.

22.     Hanson nevertheless continued to yell and berate the plaintiff in front of his children.

23.     Hanson's conduct during the seizure was reckless and deliberately indifferent to the rights of plaintiff and his children.

24.     Plaintiff asked the officers in sum and substance, what was going to

happen next.

25. Without answering plaintiff, the officers walked away.

26. As defendant Hanson passed plaintiff's children's window, he loudly called plaintiff "a fucking asshole."

27. This remark was highly offensive to plaintiff, who considers it a point of honor to never curse in front of his children and had done nothing wrong.

28. Hanson's behavior and profanity also traumatized plaintiff's children.

29. Such conduct is not surprising from defendant Hanson, a known bad apple.

30. For example, in *Snead v. City of New York*, 16 CV 9528 (AJN), a lawsuit also pending in this district, defendant Hanson is alleged to have directly participated in egregious constitutional violations, including chaining the female plaintiff to a wall for hours, preventing her from using the restroom until she urinated on herself.

31. Ms. Snead also alleges that Hanson laughed at her predicament and made disparaging comments about her weight. Ms. Snead, like plaintiff Ricard Dolcine, is also African American.

*Stop 2*

32. Mr. Dolcine next encountered defendant Hanson on March 4, 2016, while driving southbound in his Range Rover on Lenox Avenue in Manhattan.

33. Plaintiff was again pulled over by defendants Hanson and Donohue.

34. Like the first stop, Hanson quickly became irate and verbally abusive to plaintiff without any justification.

35. Despite plaintiff's calm demeanor and compliance, defendants Donohue and Hanson called for a sergeant to come to the scene.

36. Defendant Sergeant Ruffin arrived on scene, spoke with defendants Donohue and Hanson and then, without speaking to plaintiff, ordered him to the 32nd Precinct.

37. After arriving at the precinct, plaintiff was approached by defendant Derenze who falsely represented to Mr. Dolcine that he was a union delegate representing plaintiff's interests.

38. Believing that Derenze was acting on his behalf and as a proper delegate, Mr. Dolcine candidly related the entirety of the events regarding the two stops.

39. Plaintiff described how defendant Hanson became belligerent on both occasions, called him a "fucking asshole" in front of his children and was generally abusive to plaintiff, expecting that Derenze would facilitate the lodging of appropriate charges against Hanson for his egregious abuses of authority in the two incidents.

40. Thereafter, while still at the 32nd Precinct, and without the benefit of adequate counsel, plaintiff was subjected to an improper "GO-15" official interview.

41. It was during the interview that plaintiff learned that defendant Derenze was serving as a delegate and fiduciary for defendants Hanson and Donohue and was, in fact, adverse to plaintiff.

42. Investigators questioned plaintiff with information that they could have only obtained through Mr. Dolcine's conversation with defendant Derenze moments earlier, which plaintiff reasonably understood to be privileged.

43. At the conclusion of the hearing on, Mr. Dolcine was ordered to turn over his gun and shield and was placed on a thirty-day suspension. This was improper and in violation of plaintiff's right to due process.

44. Plaintiff was then improperly suspended for 15 days, which also violates due process.

45. At the time plaintiff was placed on suspension, he had been on a "detective track" and had already applied to the prestigious Special Victim's Unit.

46. Following the suspension, plaintiff was, *inter alia*, placed on modified duty, prohibited from obtaining overtime, moved out of his precinct and into Viper 8, an assignment for troubled officers – and any possibility of him becoming a detective was lost.

47. Plaintiff suffered additional damage as a result of defendants' actions. Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear,

pain, anxiety, embarrassment, humiliation, damage to his reputation, lost wages, lost future earnings, lost career opportunities and loss of advancement.

## FIRST CLAIM
### Bias-Based Profiling

48. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

49. Defendants only targeted Mr. Dolcine because of his race, rather than his behavior or other information linking him to suspected unlawful activity.

50. Thus, the defendant officers engaged in bias-based profiling in violation of Section 14-151(c)(i) and (ii) of the Administrative Code of the City of New York.

51. Accordingly, plaintiff is entitled to injunctive and declaratory relief, along with reasonable attorney's fees and costs.

## SECOND CLAIM
### Deprivation of Due Process

52. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

53. Plaintiff Ricardo Dolcine has a liberty interest protected by the constitution, in both his freedom and his career as a police officer, as well as a property interest in his future earnings and the benefits of career advancement.

54. Plaintiff was deprived of his liberty and property interests as a result of insufficient process and the intentional acts of the defendants.

55. Specifically, Hanson and Donohue, under color of law, *inter alia*, lied to investigators and an administrative judge and so tainted the proceedings as to deprive Mr. Dolcine of his federally-protected right to due process.

56. Likewise, in giving Mr. Dolcine the false impression that he was acting toward him in a fiduciary capacity, defendant Derenze deprived Mr. Dolcine of constitutionally-adequate process.

57. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

### THIRD CLAIM
### Supervisory Liability

58. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

59. Defendant Ruffin and other unidentified supervisors:

 (i) personally participated in the violation of plaintiff's rights;

(ii) were aware that plaintiff's rights were being violated but failed to remedy the wrong;

(iii) created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom;

(iv) were grossly negligent in the supervision of their subordinates; and

(v) were deliberately to the rights of Mr. Dolcine.

60. Accordingly, the supervisory defendants are liable for the deprivation of plaintiff's rights.

61. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM
### Violation of the Fourth Amendment

62. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

63. Defendants violated the Fourth and Fourteenth Amendments because they stopped and seized plaintiff without reasonable suspicion or probable cause.

64. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## FIFTH CLAIM
*Monell*

65.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

66.     The City of New York, and its policies, customs and practices, were the moving force behind plaintiff's constitutional deprivations.

67.     As a matter of policy, the City of New York fosters an environment at the precinct- and borough-levels that allow NYPD officers to falsely accuse innocent parties of wrongdoing, as happened in this case.

68.     The City, as a matter of policy, fails to appropriately train its union delegates in their disclosure and other constitutional obligations.

69.     As a matter of policy, the City failed to supervise, train and discipline Officer Hanson even though he is known to be a problem officer.

70.     The NYPD has maintained such policies with deliberate indifference to the rights of citizens such as Mr. Dolcine.

71.     Actions taken under the color of law deprived plaintiff of his federally-protected rights, as described above.

-12-

72. The municipality's policy with respect to its failure to train, discipline and supervise defendant Hanson, and problem officers like him, proximately caused the violation of Mr. Dolcine's rights.

73. The constitutional injury was caused by the official policies of the municipality in its training, supervision and discipline of problem officers like defendant Hanson.

74. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) An order requiring the City of New York to restore plaintiff to a detective-track career path at NYPD (including, if necessary, sealing the outcome of the disciplinary case);

(d) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(e) Such other and further relief as this Court deems just and proper.

Dated:       May 18, 2018
             New York, New York

                              HARVIS & FETT LLP

                              _____
                              Gabriel P. Harvis
                              305 Broadway, 14th Floor
                              New York, New York 10007
                              (212) 323-6880
                              gharvis@civilrights.nyc

                              *Attorneys for plaintiff*