17-CV-4835 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO DOLCINE,

Plaintiff,

-against-

CITY OF NEW YORK; Police Officer RICHARD HANSON; Police Officer KERIN DONOHUE; Sergeant TOMEKA RUFFIN; Police Officer CHRISTOPHER DERENZE; and JOHN and JANE DOE 1 through 10,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS HANSON, DONAHUE, RUFFIN, AND DERENZE'S MOTION TO PARTIALLY DISMISS THE FIRST AMENDED COMPLAINT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants Hanson, Donohue, Ruffin, and Derenze*
*100 Church Street, Room 2-102*
*New York, N.Y. 10007*

*Of Counsel: John Corbin Carter*

*Tel: (212) 356-2078*
*Matter #: 2017-054751*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

ARGUMENT .......... 4

POINT I .......... 6

PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED .......... 6

POINT II .......... 12

THE FAC FAILS TO SUFFICIENTLY PLEAD MONELL LIABILITY AGAINST THE CITY OF NEW YORK .......... 12

CONCLUSION .......... 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

RICARDO DOLCINE,

Plaintiff,

-against-

CITY OF NEW YORK; Police Officer RICHARD HANSON; Police Officer KERIN DONOHUE; Sergeant TOMEKA RUFFIN; Police Officer CHRISTOPHER DERENZE; and JOHN and JANE DOE 1 through 10,

Defendants.

----------------------------------------------------------------------x

17-CV-4835 (RWS)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS HANSON, DONAHUE, RUFFIN, AND DERENZE'S MOTION TO PARTIALLY DISMISS THE FIRST AMENDED COMPLAINT**

## PRELIMINARY STATEMENT

This action is brought by Ricardo Dolcine, a Police Officer in the New York City Police Department ("NYPD"), against Police Officer Richard Hanson, Police Officer Kerin Donohue, Sergeant Tomeka Ruffin, Police Officer Christopher Derenze (collectively "Represented Defendants"), and the City of New York, as well as ten John and Jane Doe defendants. Represented Defendants submit this memorandum of law in support of their motion to partially dismiss the First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Although Plaintiff asserts several claims in the FAC, Represented Defendants move solely to dismiss Plaintiff's claims under 42 U.S.C. § 1983 for alleged constitutional due process violations. Plaintiff's claims that Represented Defendants deprived him of liberty and property interests without due process, presumably in violation of the Fourteenth Amendment,

must be dismissed. First, Plaintiff's claim that he was deprived of a liberty interest without due process (i.e. his "stigma-plus" claim) should be dismissed because the FAC does not adequately allege that: (i) Represented Defendants disseminated false and stigmatizing information about Plaintiff; (ii) that he was subjected to a tangible and material state-imposed burden in addition to the false and stigmatizing statement; and (iii) that the alleged false and stigmatizing statements were made public, concurrently with, or in close proximity to, the tangible and material state-imposed burden. Plaintiff otherwise fails to articulate any other liberty interest-based claim. Second, Plaintiff's claim that he was deprived of a property interest without due process is likewise rendered implausible due to the dearth of factual allegations here. Although Plaintiff identifies "future earnings" and "career advancement" as alleged property interests, courts have routinely held that there are no constitutionally guarded property interests in prospective employment or promotional opportunities.

Furthermore, although the City of New York ("the City") has not been properly served as a defendant in this action to date, in the event that the City is properly served, there is no municipal liability in this action under Monell and its progeny. Plaintiff has wholly failed to allege any sort of specific municipal policy, custom, or practice that could impose liability for the City in his § 1983 claims. Consequently, if or when it is properly served, the City must be dismissed as a defendant.

## STATEMENT OF FACTS[1]

Plaintiff, Ricardo Dolcine, is a Police Officer in the NYPD. See FAC ¶ 13. On or about February 20, 2016, Plaintiff was driving a motor vehicle when he was pulled over by Defendants Hanson and Donahue – both NYPD Police Officers – in the Bronx, New York. See

[1] For the purposes of this motion only, well-pleaded allegations of fact in the FAC are deemed to be true.

id. ¶¶ 17, 19. Plaintiff alleges that Defendant Hanson verbally berated Plaintiff and cursed at him before Defendants Hanson and Donahue "walked away." See id. ¶¶ 20-28. Plaintiff does not allege that he was arrested or otherwise detained. Approximately two weeks later, on March 4, 2016, Defendants Hanson and Donahue once again pulled over Plaintiff while he drove a motor vehicle through the Bronx. See id. ¶¶ 32-33. Plaintiff alleges that Defendant Hanson once again became verbally abusive before Hanson called a sergeant to come to the scene. See id. ¶¶ 34-35. Defendant Ruffin – an NYPD Sergeant – arrived at the scene, spoke with Defendants Donahue and Hanson, then directed Plaintiff – a Police Officer – to NYPD's 32nd Precinct for further questioning regarding the incident. See id. ¶ 36. Again, Plaintiff does not allege that he was arrested or otherwise detained after this March 4, 2016 incident.

Upon arriving at the NYPD precinct, Plaintiff claims that he was approached by Defendant Derenze, who "falsely represented . . . that he was a union delegate representing [P]laintiff's interests." Id. ¶ 37. Believing Derenze was acting on his behalf, Plaintiff recited his version of events to Derenze, only later to learn that Derenze "was serving as a delegate and fiduciary for [D]efendants Hanson and Donahue and was, in fact, adverse to [P]laintiff. Id. ¶ 41. While at the NYPD precinct, NYPD conducted a "GO-15" [General Order 15] interview with Plaintiff regarding his potential employment misconduct. See id. ¶ 40. At the conclusion of the "hearing," Plaintiff was ordered to turn over his gun and shield and was placed on a temporary suspension. See id. ¶¶ 43-44. Following his temporary suspension, Plaintiff was "placed on modified duty, prohibited from obtaining overtime, [and] moved out of his precinct." Id. ¶ 46. Plaintiff also claims that these disciplinary consequences also lessened the possibility of him receiving a promotion to detective. See id.

Thereafter, an NYPD disciplinary trial was held before an "administrative judge" regarding Plaintiff's conduct, which culminated in a December 9, 2016 Report and Recommendation. After the disciplinary trial, Plaintiff was found guilty of the charge of being "discourteous to on-duty Members of Service in that said Officer was belligerent and yelled expletives at the on-duty Members of Service." See Carter Decl., Exhibit "A," at 1; see also FAC ¶¶ 46, 55. Plaintiff was also found not guilty of "fail[ing] and neglect[ing] to comply with the direction of on-duty Members of Service relating to a traffic stop." Id. Due to Plaintiff's guilt on the first charge, on March 20, 2017, Police Commissioner O'Neill approved the Report and Recommendation's penalty imposing Plaintiff's forfeiture of eleven days. See id. at 14.

## ARGUMENT

### Standard on a Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss on his §1983 claim, plaintiff must plead facts adequate "to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In Iqbal, the Supreme Court explained the plausibility standard by stating that, where a complaint pleads facts that are merely consistent with a defendant's liability "without some further factual enhancement[,] it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 697 (quoting Twombly, 550 U.S. at 557). That is, the facts set forth in the complaint "must be enough to raise a right to relief above the speculative level," and a party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). A complaint fails to state a claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 555 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Unless a plaintiff's well-pleaded allegations of fact have 'nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed.'" In applying this standard, the court accepts as true all well-pleaded factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements for a cause of action." Iqbal, 556 U.S. at 662 (citing Twombly, 550 U.S. at 555). Although the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

In considering a motion to dismiss under Rule 12(b)(6), the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable, L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). "Where a document is not incorporated by reference, the Court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (citations and internal quotations omitted). Here, Represented Defendants have included one document in their motion: the December 9, 2016 Report and Recommendation of NYPD Assistant Deputy Commissioner of Trials Jeff S. Adler who presided over the departmental trial on the disciplinary charge brought against Plaintiff in relation to the two motor vehicle stops that form the crux of Plaintiff's allegations. This document is Exhibit "A" to the July 27, 2018 Declaration of John Corbin Carter, and is incorporated through Plaintiff's allegations' reliance on the "administrative judge" suspending him and the testimony given to the administrative judge by Defendants

Hanson and Donahue. It is otherwise integral to the FAC as it forms the basis for Plaintiff's allegations that Defendants Hanson and Donahue "lied to . . . an administrative judge and so tainted the proceedings as to deprive [Plaintiff] of his federally-protected right to due process." FAC ¶ 55; see also Chambers, 282 F.3d at 153.

## POINT I

## PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corr.'s v. Thompson, 490 U.S. 454, 460 (1989), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472, 484 (1995). When analyzing procedural due process claims, the threshold issue is whether the plaintiff possessed a valid property or liberty interest. See Oneida Indian Nation of N.Y. v. Madison Cnty., 665 F.3d 408, 427-28 (2d Cir. 2011); see also Zahra v. Town of Southfield, 48 F.3d 674, 689 (2d Cir. 1995). The Due Process Clause "does not itself create" protectable property interests; rather property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (quotations omitted).

### A. Plaintiff Cannot State a Liberty Interest Deprivation Claim

Plaintiff makes a two-part claim that Represented Defendants deprived him of a liberty interest. First, Plaintiff alleges – albeit amorphously – that he had a liberty interest in his "freedom." See FAC ¶ 53. Plaintiff's invocation of the word "freedom," absent the tether of factually-specific allegations that his freedom was somehow intentionally obstructed by

Represented Defendants, does not plausibly support a cause of action. Construing Plaintiff's allegation as broadly as possible to involve the GO-15 police precinct interview that took place as a result of Plaintiff's NYPD employment disciplining vis-à-vis his role in the traffic stop disputes, Plaintiff still cannot make out a claim for relief. Courts have made clear that, in the context of potential employee misconduct, organizations – such as NYPD – do not implicate constitutional liberty interests when they order employees to report for disciplinary questioning. See, e.g., Cerrone v. Brown, 246 F.3d 194, 199-202 (2d Cir. 2001); Driebel v. City of Milwaukee, 298 F.3d 622 (7th Cir 2002) ("We reject the appellant officers' argument that a patrolman is seized, within the meaning of the Fourth Amendment, at the time that he is ordered to report for questioning at a designated, centralized area, such as the headquarters for the internal affairs department (wherever it may be located) or some other suitable location determined by the superior officer."); United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (per curiam) (holding that no seizure occurred when a civilian Air Force employee was ordered to report for an interview with intelligence officer); United States v. Baird, 851 F.2d 376, 380-82 (D.C. Cir. 1988). Accordingly, Plaintiff cannot plausibly prevail on this ambiguous "freedom" claim.

Second, Plaintiff claims that Defendants infringed upon a protected liberty interest in "his career as a police officer" and that he suffered "lost career opportunities and loss of advancement." Where the liberty interest allegedly subjected to deprivation without due process is reputational in nature, as Plaintiff essentially asserts here, a plaintiff must establish the elements of what is referred to as a "stigma-plus" claim. To prevail on a "stigma-plus" claim, Plaintiff must show that (1) Represented Defendants made false and stigmatizing statements about him –statements that call into question his good name, reputation, honor or integrity; (2) a

tangible and material state-imposed burden in addition to the stigmatizing statement, and (3) the false and stigmatizing statements were made public, concurrently with, or in close proximity to the tangible and material state-imposed burden. Segal v. City of New York, 459 F.3d 207, 212 (2006); see also Burgos Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010); Velez v. Levy, 401 F.3d 75, 89 (2d Cir. 2005); Sadallah v. City of Utica, 383 F.3d 34, 38 (2004). Finally, "a stigma-plus claim [only] enforces a limited but important right: the right to be heard . . . [at a] name-clearing hearing." Segal, 459 F.3d at 213.

Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" satisfies the stigma requirement. Id. at 212 (quoting Donato v. Plainview-Old Bethpage Sch. Dist., 96 F.3d 623, 630-31 (2d Cir. 1996)). "Statement[s] that an employee poorly performed [his] duties or acted in an improper manner, or that describe behavior or actions that are within the employee's power to correct, do not generally qualify as stigma for constitutional purposes." Adams v. N.Y. State Educ. Dep't, 732 F. Supp. 2d 420, 449 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). Moreover, the "deleterious effects which flow directly from a sullied reputation would normally . . . be insufficient. These would normally include the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequences of a bad reputation." Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir. 1994).

Plaintiff's claim that he was deprived of a liberty interest claim should be dismissed because he alleges neither a stigma nor the required "plus." Plaintiff vaguely concludes that his constitutional interests were deprived when Defendants Hanson and Donahue

"lied to investigators and an administrative judge and so tainted the proceedings as to deprive [Plaintiff] of his federally-protected right to due process." FAC ¶ 55. As an initial matter, Plaintiff wholly fails to state what statements Hanson and Donahue made which were false and defamatory to Plaintiff's reputation. A stigma-plus claim cannot rest upon ambiguous "lies" which cannot be judicially assessed for the specific types of reputational damage they might inflict. See Vega v. Lantz, 596 F.3d 77, 82 (2d Cir. 2010).

Even if plaintiff had alleged that specific statements made about him by Represented Defendants were false, the FAC does not contain any factual allegations tending to show that the those statements are stigmatizing. Construed most liberally, Plaintiff's allegations state that the "lies" of Defendants Hanson and Donahue somehow implicated his "career as a police officer," such that he was unable to achieve future promotions. See FAC ¶¶ 53-55. Taking his characterization of the results of these mysterious statements as accurate, Plaintiff's allegations regarding his inability to pursue his "career as a police officer" are unambiguously insufficient to establish a stigma. See Valmonte, 18 F.3d at 1001. As Plaintiff specifies, he is still currently employed as a Police Officer with the NYPD. See FAC ¶ 13.

Yet another flaw in Plaintiff's stigma-plus claim is that he does not allege that he was subjected to a tangible and material state-imposed burden. In the employment context, burdens that can satisfy the "plus" prong include the deprivation of a plaintiff's property interest, Greenwood v. N.Y. Off. of Mental Health, 163 F.3d. 110, 124 (2d Cir. 1996) (revocation of a physician's privileges) and the termination of a plaintiff's government employment, Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004). Here, Plaintiff's employment was not terminated and he does not sufficiently allege a deprived property interest, as set forth below. Rather, Plaintiff complains that he was reassigned to another command, that he was prevented

from seeking overtime, and that he was placed on modified duty. See FAC ¶ 46. Plaintiff was also, after a departmental disciplinary trial, found guilty of misconduct and penalized with a forfeiture of eleven days. See Carter Decl., Exhibit "A." Any negative impact on Plaintiff's work assignments including being transferred, the alleged reduction in his overtime, or his placement on modified duty, are not the types of state-imposed burdens that constitute the "plus" element of a liberty interest claim. See Boss v. Kelly, 306 F. App'x 649, 650-51 (2d Cir. 2009) (holding that a police officer did not possess a property interest in carrying a gun, in holding a particular work assignment, in the ability to earn overtime pay, or in the ability to earn a promotion).

Accordingly, the Court should dismiss Plaintiff's claim that he was deprived of a liberty interest without due process.

**B. Plaintiff Cannot State a Property Interest Deprivation Claim**

Aside from being unable to identify a deprived liberty interest, Plaintiff also cannot identify a property interest which was unconstitutionally deprived by Represented Defendants. Plaintiff generally claims a property interest in "future earnings and the benefits of career advancement." See FAC ¶ 53. Absent a termination, Plaintiff attempts to rest his property interest claim on lost opportunities that he claims exist in the future. The Second Circuit has held, however, that property interests do not exist in future government employment or for promotional opportunities: "[T]here is no constitutionally protected property interest in prospective government employment," and a job applicant therefore has no property interest in the position for which he applies. Abramson v. Pataki, 278 F.3d 93, 100 (2d Cir. 2002); see also McMenemy, 241 F.3d at 288 (Plaintiff "had no property interest in fair consideration for [a] promotion."). Nor can Plaintiff claim a property interest in future overtime pay opportunities. See Cassidy v. Scoppetta, 365 F. Supp. 2d 283 (E.D.N.Y. 2005) ("Every court in this circuit that

has considered the issue of whether there exists a constitutionally protected property interest in overtime pay has answered in the negative, and with good reason." (collecting cases)).

Even if Plaintiff were to articulate some sort of implicated property interest, a departmental trial hearing was held regarding Plaintiff's misconduct, and Plaintiff was represented – before an impartial administrative judge – by the counsel of his choosing. See Carter Decl., Exhibit "A." Though Plaintiff does not agree with the results of the administrative trial, Plaintiff was afforded his due process rights—despite the absence of a constitutionally protected interest.

Accordingly, the Court should dismiss Plaintiff's claim that he was deprived of a property interest without due process.

### C. Plaintiff Did Not Avail Himself of Post-Deprivation Review Mechanisms

Even if the Court were to identify a protected constitutional interest, Plaintiff's Due Process Clause claims cannot go forward because the Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." See Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996), cert. denied, 521 U.S. 1140 (1997). Where, as here, a plaintiff "sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, 'an Article 78 proceeding is a perfectly adequate post deprivation remedy.'" Grillo v. N.Y. City Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002) (quoting Hellenic Am. Neighborhood Action Comm., 101 F.3d at 880). As Plaintiff failed to initiate an Article 78 proceeding to vindicate any alleged due process violations resulting from administrative decisions, any due process claim by Plaintiff stated here must fail. See Grillo, 291 F. 3d at 234.

**POINT II**

**THE FAC FAILS TO SUFFICIENTLY PLEAD MONELL LIABILITY AGAINST THE CITY OF NEW YORK**

Plaintiff has not properly served the City of New York as a defendant in this action to date. However, even if Plaintiff were to properly serve the City of New York, Plaintiff's claims under 42 U.S.C. § 1983 against the City would also be dismissed because he has failed to sufficiently plead that the alleged constitutional violations were the result of an official policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Owen v. Haas, 601 F.2d 1242 (2d Cir.), cert. denied, 444 U.S. 980 (1979). To hold the City liable under § 1983, Plaintiff bears the burden of establishing that the government entity itself deprived him of a constitutional right through a municipal "policy," "practice," or "custom." See Monell, 436 U.S. at 690-95; Jeffes v. Barnes, 208 F.3d 49, 57-58 (2d Cir. 2000) ("Where a plaintiff relies . . . on the theory that the conduct of a given official represents official policy, it is incumbent on plaintiff to establish that element as a matter of law."). A mere assertion that a municipality has such a policy is insufficient to establish Monell liability. See Bd. of Comm'rs v. Brown, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior.") (internal citations omitted); Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011). As the Supreme Court has made clear in respect to municipal liability,

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. . . . The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404; see also Fierro v. City of New York, 994 F. Supp. 2d 581, 588-89 (S.D.N.Y. 2014).

Proof of a single incident of unconstitutional activity is insufficient to demonstrate the existence of a custom or policy. See City of Oklahoma v. Tuttle, 471 U.S. 808, 821 (1985). More specifically, an official's single decision to alter an employee's position does not somehow create a municipal policy or custom. "The decision to fire one man, for whatever reason, is neither a course or method of action to help guide and determine present and future decisions nor a high-level overall plan." Collins v. Stasiuk, 56 F. Supp. 2d 344, 346 (S.D.N.Y. 1999). Finding that an employment decision in regard to one person is a "personnel decision and nothing more," this Court has noted that "[i]t is hard to imagine any decision that falls farther outside the common understanding of the word 'policy.'" Id. at 345 (citing Soto v. Schembri, 960 F. Supp. 751, 759 (S.D.N.Y. 1997). In addition, an employment decision taken with respect to a single employee is not "so 'persistent and widespread'" as to justify the imposition of municipal liability." Giaccio v. City of New York, 308 F. App'x 470, 472 (2d Cir. 2009) (quoting Green v. City of New York, 465 F.3d 65, 80 (2d Cir. 2006)).

Here, Plaintiff claims that the City "fosters an environment at the precinct- and borough-levels that allow NYPD officers to falsely accuse innocent parties of wrongdoing, as happened in the case;" that the City "fails to appropriately train its union delegates in their disclosure and other constitutional obligations;" and that the City "failed to supervise, train and discipline Officer Hanson even though he is known as a problem officer." FAC ¶¶ 66-69. Despite Plaintiff's conclusory contentions, nothing alleged plausibly supports a claim that there was a particular policy, practice, or custom of the City or the NYPD that governed the action Plaintiff alleges here. For instance, Plaintiff has not pointed to any other instances of NYPD

officers falsely accusing fellow officers of wrongdoing that might "foster an environment" of impermissible conduct. See id. ¶ 67. Additionally, Plaintiff has not put forth allegations that could plausibly lead to Monell claims regarding improper training of Police Officers where Plaintiff points to no other instances of alleged constitutional misconduct. See id. ¶¶ 68-69. Thus, Plaintiff cannot demonstrate the existence of an identified municipal policy or practice that was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694; see also Fierro, 994 F. Supp. 2d at 588-89. Plaintiff has not made the necessary claim that any of the alleged actions were "so persistent or widespread" to justify the City's liability here. See Giaccio, 308 F. App'x at 472 (internal citations omitted).

Furthermore, plaintiff has failed to state a plausible constitutional violation at all for the reasons detailed above. Absent any underlying constitutional violation, there can be no municipal liability. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist., 11 F. Supp. 3d 348, 373 (E.D.N.Y. 2014) ("The dismissal of Plaintiff's underlying [constitutional claim] requires dismissal of Plaintiff's municipal liability claim, as Defendants cannot be liable where there is no underlying constitutional violation.").

Accordingly, pending proper service upon the City of New York, all claims against potential defendant City of New York should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the First Amended Complaint as to defendants Hanson, Donahue, Ruffin, and Derenze, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 27, 2018

ZACHARY W. CARTER
Corporation Counsel of the
City of New York
Attorney for Defendants Hanson,
Donahue, Ruffin, and Derenze
100 Church Street, Room 2-102
New York, New York 10007
(212) 356-2078
jocarter@law.nyc.gov

By: /s/
JOHN CORBIN CARTER
Assistant Corporation Counsel