UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
RICARDO DOLCINE,

                           Plaintiff,

               -against-

Police Officer RICHARD HANSON; Police Officer KERIN DONAHUE; Sergeant TOMEKA RUFFIN; and JOHN and JANE DOE 1 through 10,

                           Defendants.
------------------------------------------------------------------ x

**SECOND AMENDED COMPLAINT**

Jury Trial Demanded

17 CV 4835 (VEC) (JLC)

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States, as well as Section 14-151 of the Administrative Code of the City of New York.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5. This Court has supplemental jurisdiction over the New York City claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. Plaintiff Ricardo Dolcine is a resident of New York County in the City and State of New York.

8. The individual defendants, at all times relevant herein, were officers, employees and agents of the NYPD. The individual defendants are sued in their individual and official capacities.

9. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

10. At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

11. At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

12. Plaintiff is a decorated military combat veteran and current NYPD officer.

13. Prior to the events described herein, plaintiff had no disciplinary record and bright career prospects.

14. Indeed, Mr. Dolcine was likely to reach detective or other superior rank.

15. Now, as a direct result of the defendants' discriminatory and unconstitutional conduct as described herein, Mr. Dolcine's career has been totally derailed.

*Stop 1*

16. On or about February 20, 2016, at approximately 10:00 a.m., plaintiff, who is African-American and was off-duty, was lawfully operating his Range Rover SUV in Manhattan, heading northbound on Lenox Avenue in the vicinity of 145th Street.

17. Plaintiff's children, ages five and seven, were in the backseat of the vehicle.

18. Defendants Hanson and Donahue pulled plaintiff over for no reason, impermissibly targeting him because he was a Black man driving an expensive car.

19. Defendant Hanson approached plaintiff's window and began yelling at him to further lower the rear windows of the vehicle.

20. Plaintiff, who had his NYPD ID card on display for the officers, complied with all directions and was extremely courteous and compliant.

21. Hanson nevertheless continued to yell and berate the plaintiff in front of his children.

22. Hanson's conduct during the seizure was reckless and deliberately indifferent to the rights of plaintiff and his children.

23. Plaintiff asked the officers in sum and substance, what was going to happen next.

24. Without answering plaintiff, the officers walked away.

25. As defendant Hanson passed plaintiff's children's window, he loudly called plaintiff "a fucking asshole."

26. This remark was highly offensive to plaintiff, who considers it a point of honor to never curse in front of his children and had done nothing wrong.

27. Hanson's behavior and profanity also traumatized plaintiff's children.

28. Such conduct is not surprising from defendant Hanson, a known bad apple.

29. For example, in *Snead v. City of New York*, 16 CV 9528 (AJN), a lawsuit also pending in this district, defendant Hanson is alleged to have directly participated in egregious constitutional violations, including chaining the female plaintiff to a wall for hours, preventing her from using the restroom until she urinated on herself.

30. Ms. Snead also alleges that Hanson laughed at her predicament and made disparaging comments about her weight. Ms. Snead, like plaintiff Ricard Dolcine, is also African American.

*Stop 2*

31. Mr. Dolcine next encountered defendant Hanson on March 4, 2016, while driving southbound in his Range Rover on Lenox Avenue in Manhattan.

32. Plaintiff was again pulled over by defendants Hanson and Donahue.

33. Like the first stop, Hanson quickly became irate and verbally abusive to plaintiff without any justification.

34. Despite plaintiff's calm demeanor and compliance, defendants Donahue and Hanson called for a sergeant to come to the scene.

35. Defendant Sergeant Ruffin arrived on scene, spoke with defendants Donahue and Hanson and then, without speaking to plaintiff, ordered him to the 32nd Precinct.

36. After arriving at the precinct, plaintiff was approached by Officer Derenze who falsely represented to Mr. Dolcine that he was a union delegate representing plaintiff's interests.

37. Believing that Derenze was acting on his behalf and as a proper delegate, Mr. Dolcine candidly related the entirety of the events regarding the two stops.

38. Plaintiff described how defendant Hanson became belligerent on both

occasions, called him a "fucking asshole" in front of his children and was generally abusive to plaintiff, expecting that Derenze would facilitate the lodging of appropriate charges against Hanson for his egregious abuses of authority in the two incidents.

39. Thereafter, while still at the 32nd Precinct, and without the benefit of adequate counsel, plaintiff was subjected to an improper "GO-15" official interview.

40. It was during the interview that plaintiff learned that Derenze was serving as a delegate and fiduciary for defendants Hanson and Donahue and was, in fact, adverse to plaintiff.

41. As a result of Derenze's conduct, investigators "cross-examined" plaintiff with information they could have only obtained through Mr. Dolcine's conversation with Derenze moments earlier, which plaintiff reasonably understood to be privileged.

42. Instead of a neutral interview, the GO-15 was, for all intents and purposes, an inquisition wherein Mr. Dolcine was treated as the wrongdoer from the outset.

43. At the subsequent trial, the judge would eventually give credence to plaintiff's contention that Derenze had communicated with GO-15 investigators about his communications with Mr. Dolcine when the judge agreed that the GO-15 questioning was "very specific," and not the typical open-ended questioning normally seen in such an interview.

44. The trial judge then asked the parties to stipulate to the fact that the questioning during the GO-15 was "very specific," and the parties so stipulated.

45. At the conclusion of the GO-15 interview, Mr. Dolcine was ordered to turn over his gun and shield and was placed on a thirty-day suspension. This was improper and in violation of plaintiff's right to due process.

46. Unfounded charges and specifications were then filed against Mr. Dolcine and an NYPD disciplinary trial was held in late 2016.

47. The judge found Mr. Dolcine guilty of discourtesy and an eleven-day suspension without pay was upheld.

48. During both the GO-15 interview and the trial, defendants lied, under color of law, when they falsely claimed that Mr. Dolcine was, *inter alia*, very combative and disobeyed directions by the officers. Specifically, defendants told the following falsehoods:

- Plaintiff caused a scene and acted in an "irate" manner (Transcript, Disciplinary Trial ("Transcript") dated November 4, 2016, annexed hereto as Exhibit 1 ("Exh. 1"), p. 109, ln. 15);
- Plaintiff was yelling at the top of his lungs (Exh. 1, Transcript, p. 113, ln. 12-16);
- As plaintiff exited his vehicle during the second stop he was yelling at the top of his lungs, threatening defendants, saying in sum, that [Hanson and Donahue] would be fucking sorry and that they don't know who they were messing with (Exh. 1, Transcript, p. 116, ln. 12-18, p. 130, ln. 23-25);
- Plaintiff failed to comply with defendants' orders on more than one occasion (Exh. 1, Transcript, p. 111 ln. 14 through p. 112, ln. 22);
- Plaintiff repeatedly had to be directed to get back in his vehicle (Exh. 1,

Transcript, p. 118, ln. 2-6); and

- Plaintiff's irrational behavior caused a crowd to form (Exh. 1, Transcript, p. 159, ln. 17-23).

49. The trial judge found Mr. Dolcine "not guilty" of the only other charge levied against him - failure to comply with an order.

50. Upon information and belief, available video footage shows that the "crowd" that allegedly formed as a result of plaintiff's "irate" behavior, as testified to by defendants Hanson and Donahue, was entirely fictional.

51. At the time plaintiff was placed on suspension, he had been on a "detective track" and had already applied to the prestigious Special Victim's Unit.

52. Following the suspension, plaintiff was, *inter alia*, placed on modified duty, prohibited from obtaining overtime, moved out of his precinct and into Viper 8, an assignment for troubled officers – and any possibility of him becoming a detective was lost.

53. As a result of being placed on the Viper 8 Unit, Mr. Dolcine incurred the cost of having to pay tolls to travel from his home to the Viper 8 unit, costs he never before incurred when assigned to the 43rd Precinct.

54. Plaintiff suffered additional damage as a result of defendants' actions. Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, anxiety, embarrassment, humiliation, damage to his reputation, lost wages, lost

future earnings, lost career opportunities and loss of advancement.

## FIRST CLAIM
### Bias-Based Profiling

55. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

56. Defendants only targeted Mr. Dolcine because of his race, rather than his behavior or other information linking him to suspected unlawful activity.

57. Thus, the defendant officers engaged in bias-based profiling in violation of Section 14-151(c)(i) and (ii) of the Administrative Code of the City of New York.

58. Accordingly, plaintiff is entitled to injunctive and declaratory relief, along with reasonable attorney's fees and costs.

## SECOND CLAIM
### Deprivation of Due Process

59. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

60. Plaintiff Ricardo Dolcine has a liberty interest protected by the constitution in his good name and reputation, as well as a property interest in being employed as an active-duty police officer.

61. Hanson and Donahue, under color of law, lied to investigators during a GO-15 interview as well as a subsequent trial when they falsely claimed that Mr.

Dolcine was, *inter alia*, very combative and disobeyed directions by defendants during the course of the March 4th traffic stop. *See* ¶¶ 48, 50.

62. These falsehoods were made in public and in a manner that damaged plaintiff personally and professionally and caused Mr. Dolcine to be denied of his federally-protected right to due process. Defendants conduct also caused Mr. Dolcine to be suspended for eleven days without pay and further caused plaintiff to be transferred to the Viper 8 Unit and incur the cost of paying tolls as he travel to and from work.

63. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## THIRD CLAIM
**Supervisory Liability**

64. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

65. Defendant Ruffin and other unidentified supervisors:

(i) personally participated in the violation of plaintiff's rights;

(ii) were aware that plaintiff's rights were being violated but failed to remedy the wrong;

(iii) created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom;

(iv) were grossly negligent in the supervision of their subordinates; and

(v) were deliberately to the rights of Mr. Dolcine.

66. Accordingly, the supervisory defendants are liable for the deprivation of plaintiff's rights.

67. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM
### Violation of the Fourth Amendment

68. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

69. Defendants violated the Fourth and Fourteenth Amendments because they stopped and seized plaintiff without reasonable suspicion or probable cause during the course of the traffic stops on February 20, 2016 and March 4, 2016.

70. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:   July 26, 2019
         New York, New York

ELEFTERAKIS, ELEFTERAKIS & PANEK

_____
Baree N. Fett
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116
bfett@eeplaw.com

*Attorneys for plaintiff*