UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

RICARDO DOLCINE,

                                      Plaintiff,

                -against-

POLICE OFFICER RICHARD HANSON and POLICE
OFFICER KERIN QUINN,

                                   Defendants.
-----------------------------------------------------------------------x

**DEFENDANTS'
<span style="color:red">AMENDED</span> LOCAL RULE
56.1 STATEMENT OF
UNDISPUTED
MATERIAL FACTS**

17 Civ. 4835 (VEC) (JLC)

       Pursuant to Local Rule 56.1 of the Local Civil Rules of this Court, Defendants

Richard Hanson (sued herein as "Police Officer Richard Hanson" and hereinafter "Hanson") and

Kerin Quinn (sued herein as "Police Officer Kerin Donahue" and hereinafter "Quinn")

(collectively "Defendants") submit the following statement of material facts as to which

Defendants contend that there is no genuine issue to be tried:

       1.     At all times relevant herein, Plaintiff was employed by the New York City

Police Department ("NYPD") as a police officer. *See* ECF Dkt. No. 66.

       2.     In February and March of 2016, Plaintiff was assigned to the NYPD's

43rd Precinct, located in Bronx, New York. *Id.* at ¶ 53.

**A.      February 2016 Traffic Stop[1]**

       3.     On or about February 2016, Plaintiff was subject to a traffic stop by

Defendants. *Id.* at ¶ 16.

       4.     The traffic stop occurred at Lenox Avenue and 145th Street, New York,

NY. *See* Shaffer Decl. Ex. B at 57:19-22.

---

[1]Because Plaintiff has dismissed any and all claims arising out of Defendants' vehicle stop of
Plaintiff on or about February 2016 (see ECF Dkt. No. 97), Defendants provide background
information about the February 2016 vehicle stop solely for context.

5.      At the time of the traffic stop, Plaintiff was off-duty and was driving his personal vehicle.  *See* Shaffer Decl. Ex. A at 37:12-14.

6.      At the time of the traffic stop, Plaintiff's children were passengers in his vehicle, seated in the backseats.  *Id.* at 38:9–19, 43:7-15.

7.      Defendants pulled Plaintiff over because his vehicle had dark tinted windows, which appeared to be in violation of New York vehicular and traffic laws.  *See* Shaffer Decl. Ex. A at 39:20 – 41:3; Ex. B at 56:6-24.

8.      Hanson approached Plaintiff's driver's side window, and instructed Plaintiff to lower his vehicle's rear windows.  *See* Shaffer Decl. Ex. A at 45:12-16.

9.      Defendants claim that Plaintiff became irate during the traffic stop.  *See* Shaffer Decl. Ex. B at 64:3-22, 66:13 – 67:6.

10.     Defendants state that Plaintiff raised his voice at Defendants and questioned why Defendants stopped him.  *See* Shaffer Decl. Ex. B at 64:3-22.

11.     Defendants state that Plaintiff brought up the fact that his NYPD tax identification number was lower than Defendants' numbers, denoting that Plaintiff was more experienced as an officer than Defendants.  *See* Shaffer Decl. Ex. B at 66:20 – 67:6.

12.     Hanson states that Plaintiff said "Harlem cops are pussies."  *Id.*

13.     Plaintiff claims that Defendant Hanson became irate during the traffic stop.  *See* Shaffer Decl. Ex. A at 61:2-6.

14.     Plaintiff claims that Hanson called him a "fucking asshole" during the traffic stop.  *Id.* at 49:15-18.

15.     Defendants ultimately let Plaintiff go without issuing a summons.  *Id.* at 49:25 – 50:1.

**B.      March 4, 2016 Traffic Stop**

16.     On March 4, 2016, at approximately 8:14 am, Plaintiff was subject to a second traffic stop by Defendants.  *See* Shaffer Decl. Ex. C at 91-96; Ex. H at 2:12-13; Ex. I at 2:22-24.

17.     Defendants observed Plaintiff make an illegal left turn at the intersection of 139th Street and Lenox Avenue, New York, NY.  *See* Shaffer Decl. Ex. B at 92:23 – 93:16; Ex. C at 69:6 – 70:5.

18.     The traffic stop occurred in front of 50 West 139th Street, New York, NY. *See* Shaffer Decl. Ex. A at 54:14-24; Ex. H at 3:15-17; Ex. I at 2:25, 4:10; Ex. P at 107:26 – 108:4.

19.     At the time of the traffic stop, Plaintiff was off-duty and was driving his personal vehicle.  *See* Shaffer Decl. Ex. A at 54:14-21.

20.     At the time of the traffic stop, Plaintiff was alone in his vehicle.  *See* Shaffer Decl. Ex. A at 54:20-21; Ex. B at 97:23-25; Ex. C at 92:20-25.

21.     Defendants approached Plaintiff's vehicle, and Hanson requested that Plaintiff produce his driver's license and vehicle registration.  *See* Shaffer Decl. Ex. B at 17-23; Ex. H at 4:9-17; Ex. I at 7:14-22.

22.     Plaintiff did not comply with this request, and instead asked to know why he was pulled over.  *See* Shaffer Decl. Ex. A at 58:4-19; Ex. B at 102:14-16, 108:11-15; Ex. H at 4:14-17; Ex. I at 7:14-22; Ex. P at 232.

23.     Hanson stated that he would tell Plaintiff why he was pulled over once Plaintiff produced his license and registration.  *See* Shaffer Decl. Ex. A at 58:4-13; Ex. I at 7:14-22; Ex. P  at 232.

24. Plaintiff claims that he pulled out his wallet containing his shield, whereupon Hanson said "so you're a cop?" *See* Shaffer Decl. Ex. A at 59:6-7; Ex. P at 235.

25. Defendants claim that Plaintiff had his NYPD shield on display in his lap when they approached Plaintiff's vehicle. *See* Shaffer Decl. Ex. H at 4:21-22; Ex. I at 5:3-4, 8:1-12.

26. Plaintiff informed Hanson and Quinn that they had pulled him over previously. *See* Shaffer Decl. Ex. A at 59:6-16; Ex. H at 10:12-14; Ex. I at 4:19-5:3, 8:8-12.

27. Hanson stated that Plaintiff had made an illegal left turn. *See* Shaffer Decl. Ex. A at 59:18-25; Ex. B at 100:13-18; Ex. C at 102:10-103:4.

28. Plaintiff stated to Hanson that after the traffic stop concluded, Plaintiff would go back to the intersection and verify for himself whether the turn was illegal. *See* Shaffer Decl. Ex. A at 59:21-25; Ex. B at 100:13 – 101:1.

29. Plaintiff admits that he made an illegal left turn. *See* Shaffer Decl. Ex. A at 60:1-3.

30. Plaintiff claims that Hanson yelled and screamed at Plaintiff during this traffic stop. *See* Shaffer Decl. Ex. A at 60:22-25 - 61:12.

31. Defendants claim that Plaintiff yelled at Defendants during this traffic stop. *See* Shaffer Decl. Ex. B at 110:19 – 111:4; Ex. C at 104:4-12; Ex. H at 11:5-9; Ex. I at 5:4-10.

32. Defendant Quinn approached the driver's side of Plaintiff's vehicle, attempting to deescalate the disagreement. *See* Shaffer Decl. Ex. B at 102:17-22; Ex. C at 103:12-20; Ex. H at 11:5-9; Ex. I at 5:8-18.

33.     Quinn asked for Plaintiff's NYPD identification.  *See* Shaffer Decl. Ex. C at 111:17 – 112:3; Ex. H at 12:4-10; Ex. I at 5:22-25.

34.     Plaintiff gave Quinn his NYPD identification card. *See* Shaffer Decl. Ex. C at 111:17 – 112:3; Ex. H at 12:4-10; Ex. I at 5:22-25.

35.     Quinn and Hanson walked away from Plaintiff's vehicle, and returned to their marked police car to call a sergeant.  *See* Shaffer Decl. Ex. B at 111:9-15; Ex. C at 110:15-24; Ex. H at 13:1-3, 14:1-5; Ex. I at 5:22-25.

36.     After several minutes, Plaintiff exited his vehicle and walked toward Officers Quinn and Hanson.  *See* Shaffer Decl. Ex. B at 114:22 – 115:4; Ex. C at 113:18 – 114:11; Ex. H at 14:6-15; Ex. I at 11:2-10; Ex. P at 244-245.

37.     Plaintiff claims he exited his vehicle to provide Officers Quinn and Hanson with his driver's license and registration.  *See* Shaffer Decl. Ex. A at 64:5-16; Ex. J at 38:1-9; Ex. P at 244-245.

38.     Plaintiff claims that he asked Quinn to give him his NYPD identification back. *See* Shaffer Decl. Ex. J at 28:3-15; Ex. P at 245.

39.     Defendants claim that Plaintiff loudly demanded that Quinn give him his identification back.  *See* Shaffer Decl. Ex. C at 114:12-19, 117:22 – 118:10; Ex. H at 13:8-11; Ex. I at 12:10-18.

40.     Quinn informed Plaintiff that would not return the identification yet, and she was calling their sergeant.  *See* Shaffer Decl. Ex. C at 120:8-12; Ex. I at 13:13-22.

41.     Defendants ordered Plaintiff to get back in his vehicle.  *See* Shaffer Decl. Ex. B at 116:23 – 117:2; Ex. H at 15:4-10; Ex. I at 13:4-22.

42.     Plaintiff dropped his personal belongings on the ground, and bent down to pick them up.  *See* Shaffer Decl. Ex. B at 117:15-23; Ex. C at 118:7-16; Ex. H at 14:17-24; Ex. I at 12:23-13:2; Ex. P at 246-247.

43.     Plaintiff then returned to his vehicle.  *See* Shaffer Decl. Ex. B at 117:15-23; Ex. C at 120:13-16, 121:10-21; Ex. H at 17:23-24; Ex. I at 13:18-24; Ex. P at 247.

44.     Several minutes later, Sergeant Tomeka Ruffin arrived at the scene of the traffic stop.  *See* Shaffer Decl. Ex. B at 118:20-22; Ex. C at 123:19 – 124:2; Ex. D at 26:23-25; Ex. I at 13:25 – 14:2; Ex. P at 251.

45.     Sergeant Ruffin instructed Plaintiff and Defendants to drive to the NYPD's 32nd Precinct, located at 250 West 135th Street, New York, NY.  *See* Shaffer Decl. Ex. A at 66:15-67:6; Ex. B at 119:3-11; Ex. C at 123:19-24; Ex. D at 29:11-16, 36:22-37:5; Ex. I at 14:1-4; Ex. P at 251.

46.     Plaintiff drove to the 32nd Precinct pursuant to Sergeant Ruffin's instructions.  *See* Shaffer Decl. Ex. A at 67:10-13; Ex. P at 253.

47.     When Plaintiff arrived at the 32nd Precinct, he briefly spoke to an unknown captain at the precinct about the vehicle stops occurring that day and in February 2016. *See* Shaffer Decl. Ex. A at 69:20 – 70:7.

48.     Plaintiff was told to wait in a muster room within the precinct, and Plaintiff complied with that instruction.  *See* Shaffer Decl. Ex. A at 71:8-15.

49.     Plaintiff stepped out of that room to speak to his Lieutenant on the phone. *See* Shaffer Decl. Ex. A at 71:19-24.

50.     After Plaintiff called his Lieutenant, Plaintiff called his union delegate Jimmy Hernandez from the 43rd Precinct.  *See* Shaffer Decl. Ex. A at 72:15 – 73:16.

51.     Hernandez informed Plaintiff that another delegate, Officer O'Dwyer from the 43rd Precinct, was coming to the 32nd Precinct to assist Plaintiff.  *See* Shaffer Decl. Ex. A at 73:17 – 74:17.

52.     Plaintiff was then approached by Officer Derenze, a Police Benevolent Association union delegate for the 32nd Precinct.  *See* Shaffer Decl. Ex. A at 74:25 – 75:11.

53.     Derenze identified himself as a union delegate.  *See* Shaffer Decl. Ex. A at 75:18-21.

54.     Derenze told Plaintiff he was trying to "defuse the situation," and asked Plaintiff to tell him what happened.  *See* Shaffer Decl. Ex. A at 75:18-21.

55.     Derenze never told Plaintiff he was representing Plaintiff.  *See* Shaffer Decl. Ex. A at 75:22 – 76:1.

56.     Plaintiff claims he believed Derenze was representing him because Derenze said he was going to "de-escalate the situation."  *See* Shaffer Decl. Ex. A at 76:2-11.

57.     Plaintiff told Derenze about the traffic stops from that day and from February 2016. *See* Shaffer Decl. Ex. A at 76:12-19; Ex. P at 255.

58.     Plaintiff did not admit to being discourteous, or refusing to obey a lawful order, when he spoke to Derenze.  *See* Shaffer Decl. Ex. A at 76:20-78:1.

59.     Plaintiff's union delegate, Officer O'Dwyer, arrived at the 32nd Precinct after Plaintiff spoke to Derenze.  *See* Shaffer Decl. Ex. A at 78:20-25.

60.     After Plaintiff was done speaking to Derenze, Plaintiff did not see Derenze speak to Quinn or Hanson at the precinct.  *See* Shaffer Decl. Ex. P at 255-256.

61.     Eventually, Plaintiff's union delegate from the 43rd Precinct, where Plaintiff was assigned as a police officer, arrived at the 32nd Precinct. *See* Shaffer Decl. Ex. P at 257.

**C.     GO-15 Hearing**

62.     Quinn, Hanson, and Plaintiff were all formally interviewed pursuant to Patrol Guide Procedure 206-13, Interrogation of Members of the Service[2].  *See* Shaffer Decl. Exs. E-J.

63.     Plaintiff was questioned as the subject of the investigation.  *See* Shaffer Decl. Exs. J, L.

64.     Quinn and Hanson were questioned as witnesses.  *See* Shaffer Decl. Exs. H-I, L.

65.     Questioning was conducted by Deputy Inspector Davidson, the Commanding Officer of the 32nd Precinct, Captain Burke of the 32nd Precinct, as well as Lieutenant Shapiro, Lieutenant Schrader, and Sergeant Crystal of the Patrol Borough Manhattan North Investigations Unit.  *See* Shaffer Decl. Exs. H-K.

**i) Interview of Sergeant Quinn**

66.     Quinn was questioned first.  *See* Shaffer Decl. Ex. I at 1:1-2.

67.     Quinn was represented by union delegate Officer Derenze.  *Id.* at 1:16-17.

68.     Quinn stated that she observed Plaintiff make an illegal left turn at Lenox Avenue and 139th Street.  *Id.* at 3:1-16.

69.     Quinn stated that she and her partner, Officer Hanson, executed a car stop of Plaintiff's vehicle in front of 50 West 139th Street at 8:14 am.  *Id.* at 2:19-25.

---

[2] This Patrol Guide Procedure is commonly known by its former name, "GO 15," General Order 15.

70.     Quinn stated that when they executed the car stop, Plaintiff's car did not look familiar to Quinn. *Id.* at 3:17-4:3.

71.     Quinn stated that Hanson approached the driver's side of Plaintiff's vehicle, and Quinn approached the passenger side of the vehicle. *Id.* at 4:11-15.

72.     Quinn stated that Plaintiff asked Hanson what he did wrong. *Id.* at 4:19-21.

73.     Quinn stated that Hanson said once Plaintiff gave him his license and insurance, he would tell Plaintiff why the officers stopped him. *Id.* at 7:14-22.

74.     Quinn stated when Hanson asked for Plaintiff's license, registration, and insurance, Plaintiff "started getting angry." *Id.* at 4:21-23.

75.     Quinn stated that Plaintiff was "constantly talking over" Hanson, and speaking louder and louder. *Id.* at 10:3-5.

76.     Quinn stated that Plaintiff said they should recognize him because Hanson and Quinn previously pulled Plaintiff over in the same vehicle. *Id.* at 5:1-3.

77.     Quinn stated that Plaintiff had his NYPD shield in his hand. *Id.* 5:3-4.

78.     Quinn stated that Plaintiff accused Hanson and Quinn of harassing him. *Id.* at 5:4-5.

79.     Quinn stated that Plaintiff said they should not have pulled him over. *Id.* at 10:8-10.

80.     Quinn stated that Plaintiff said there was no sign at the intersection in question prohibiting him from making a left turn. *Id.* at 5:5-7, 10:9-10.

81.     Quinn stated that Plaintiff would go back and see if the sign really existed. *Id.* at 10:15-21.

82.     Quinn stated that Plaintiff began "really yelling at" Hanson.  *Id.* at 5:7.

83.     Quinn stated that Plaintiff did not threaten Hanson or Quinn when Plaintiff was in his vehicle.  *Id.* at 11:17-21.

84.     Quinn stated that she walked to the driver's side of Plaintiff's vehicle, in an effort to "calm the situation down."  *Id.* at 5:8-13.

85.     Quinn stated that she tried to explain why they stopped Plaintiff, and that there was no need for confrontation.  *Id.* at 5:13-18.

86.     Quinn stated that Plaintiff stated "Fine.  If you're not going to be listening to me at this point, then either issue me a ticket or call a sergeant."  *Id.* at 5:18-20.

87.     Quinn stated that she agreed to call a sergeant.  *Id.* at 5:20.

88.     Quinn stated that when she requested Plaintiff's ID, Plaintiff provided his NYPD identification.  *Id.* at 5:21-24.

89.     Quinn stated that she and Hanson returned to their vehicle, and Hanson called their sergeant.  *Id.* at 5:24-6:2, 11:22-6.

90.     Quinn stated that after approximately five minutes, Plaintiff got out of his vehicle and approached their car.  *Id.* at 11:25-12:4.

91.     Quinn stated that she and Hanson exited the car and told Plaintiff to get back to his vehicle.  *Id.* at 12:2-6.

92.     Quinn stated that she and Hanson repeated their commands for Plaintiff to get back in his vehicle.  *Id.* at 13:10-14.

93.     Quinn stated that Plaintiff did not obey those commands.  *Id.* at 13:8-9.

94.     Quinn stated that Plaintiff got to the hood of the police car and started screaming at Quinn.  *Id.* at 12:8-11.

95.     Quinn stated that Plaintiff screamed at her "give me back my ID! You have no right to have my ID!" *Id.* at 12:8-12.

96.     Quinn stated that Plaintiff screamed "You gonna regret this!" *Id.* at 12:16-18.

97.     Quinn stated that they were right in the middle of a street with people on the sidewalks. *Id.* at 12:12-13.

98.     Quinn stated that Plaintiff dropped his credit cards on the ground, and picked them up. *Id.* at 12:23-13:2.

99.     Quinn stated that she told Plaintiff she would hold onto his ID until her sergeant arrived. *Id.* at 13:18-22.

100.    Quinn stated that Plaintiff then returned to his vehicle. *Id.* at 13:24.

101.    Quinn stated that Sergeant Ruffin arrived at the scene of the stop, and requested that Plaintiff meet them at the precinct. *Id.* at 14:1-2.

102.    Quinn stated that she and Hanson pulled Plaintiff over approximately six to eight weeks before that day. *Id.* at 16:12-19.

103.    Quinn stated that the previous stop was regarding dark window tints on Plaintiff's vehicle. *Id.* at 16:20-23.

104.    Quinn stated that Plaintiff and Hanson had a disagreement about Plaintiff he was pulled over. *Id.* at 17:11-21.

105.    Quinn stated that Plaintiff identified himself as a police officer, and they let Plaintiff go without a ticket as a professional courtesy. *Id.* at 16:25-17:6.

106.    Quinn stated that she did not remember Plaintiff from the previous stop until Plaintiff mentioned that they had previously stopped him. *Id.* at 16:11-15.

ii)    **Hanson Interview**

107.    Hanson was questioned second.  *See* Shaffer Decl. Ex. H at 1:1-3.

108.    Hanson was represented by union delegate Officer Derenze.  *Id.* at 1:15-16.

109.    Hanson stated that he observed Plaintiff make an illegal left turn at Lenox Avenue and 139th Street.  *Id.* at 2:11-3:14.

110.    Hanson stated that he and his partner, Officer Quinn, executed a car stop of Plaintiff's vehicle in front of 50 West 139th Street at approximately 8:10 am.  *Id.* at 2:11-13.

111.    Hanson stated that he approached the driver's side of Plaintiff's vehicle, and Quinn approached the passenger side of the vehicle.  *Id.* at 4:2-7.

112.    Hanson stated that he asked Plaintiff for his identification, vehicle registration, and insurance.  *Id.* at 4:9-10.

113.    Hanson stated that at this time, he did not recognize Plaintiff.  *Id.* at 4:11-12.

114.    Hanson stated that in response to his request for Plaintiff's license, registration, and insurance, Plaintiff asked why the officers stopped him.  *Id.* at 4:14-15.

115.    Hanson stated he repeated his request for Plaintiff's license, registration, and insurance.  *Id.* at 4:15.

116.    Hanson stated that Plaintiff "became very hostile, kinda started yelling at us at that point."  *Id.* at 4:15-16.

117.    Hanson stated that Plaintiff said they had no reason to stop him, and showed Hanson and Quinn his shield.  *Id.* at 4:19-22.

118.    Hanson stated that Plaintiff did not produce his identification, insurance or registration. *Id.* at 5:9-14.

119.    Hanson stated that the "conversation continued to escalate," and Hanson began to recognize Plaintiff from the previous traffic stop. *Id.* at 5:21-24.

120.    Hanson stated that he explained to Plaintiff that he was stopped for making an illegal left turn and failing to signal. *Id.* at 10:2-6.

121.    Hanson stated that Plaintiff said he's lived there his entire life, and there's never been a sign at the intersection in question prohibiting him from making a left turn. *Id.* at 10:2-10.

122.    Hanson stated that Plaintiff was "very irate" and continued to yell "at the top of his lungs" at them. *Id.* at 11:5-7.

123.    Hanson stated that Quinn walked to the driver's side of Plaintiff's vehicle. *Id.* at 11:5-9.

124.    Hanson stated that Quinn asked Plaintiff for his identification, and that Plaintiff handed Quinn his NYPD identification card. *Id.* at 12:8-10.

125.    Hanson stated that Plaintiff requested that Quinn either write him a summons, or get a supervisor on scene. *Id.* at 12:4-6, 12:22-24.

126.    Hanson stated that he and Quinn decided to call Sergeant Ruffin, and returned to their vehicle. *Id.* at 13:1-6.

127.    Hanson stated that he called Ruffin and informed her that they stopped a member of service who was very irate and yelling. *Id.* at 13:10-18.

128.    Hanson stated that while they were waiting for Sergeant Ruffin to arrive, Plaintiff exited his vehicle. *Id.* at 13:22-14:8.

129. Hanson stated that he and Quinn instructed Plaintiff to return to his vehicle multiple times, but Plaintiff did not initially comply. *Id.* at 15:9-16.

130. Hanson stated that Plaintiff yelled at Quinn "to give him his f'ing ID back," and that Quinn would be sorry for not giving it back to him. *Id.* at 14:8-13.

131. Hanson stated that Plaintiff had his wallet in his hand and dropped his credit cards on the ground. *Id.* at 14:17-18.

132. Hanson stated that Plaintiff then returned to his vehicle. *Id.* at 14:20-24.

133. Hanson stated that while this exchange was happening, children and teachers at a nearby school were watching Plaintiff. *Id.* at 15:1-3.

134. Hanson stated that when Ruffin arrived, she told Plaintiff to go to the 32nd Precinct. *Id.* at 13:19-21.

135. Hanson stated that he and Quinn pulled Plaintiff over approximately six to eight weeks before that day, at Lenox Avenue and West 145th Street. *Id.* at 5:23 - 6:8.

136. Hanson stated that the previous stop was regarding dark window tints on Plaintiff's vehicle. *Id.* at 6:8-12.

137. Hanson stated that during the previous stop, took issue with being asked to roll down his vehicle's rear windows. *Id.* at 6:20 – 8:1.

138. Hanson stated that Plaintiff said his child was sick in the backseat. *Id.* at 8:2-4.

139. Hanson stated that he repeatedly told Plaintiff to lower the windows so they could see inside the vehicle. *Id.* at 8:5-22.

140. Hanson stated that Plaintiff eventually lowered his rear windows for a matter of seconds before rolling them back up. *Id.* at 8:23-9:8.

### iii)   Plaintiff's Interview

141.    Plaintiff was questioned third, after Hanson and Quinn.  *See* Shaffer Decl. Ex. J at 1:1-2.

142.    Plaintiff was represented by Daniel Servino, attorney for the Police Benevolent Association, as well as union delegate Police Officer Sean O'Dwyer.  *Id.* at 1:18-19.

143.    At the beginning of the interview, Plaintiff acknowledged that he was satisfied with his representation, and had adequate time to discuss the matter with his representation.  *Id.* at 2:7-11.

144.    Plaintiff was informed at the beginning of the questioning that he was the subject of an official departmental investigation, and that any statements could be used against him in relation to subsequent disciplinary charges by the NYPD.  *Id.* at 2:12 – 3:5.

145.    Plaintiff admitted that he made a left turn from Lenox Avenue onto 139th Street.  *Id.* at 5:1-17.

146.    Plaintiff stated he was pulled over by two officers who pulled him over 3-4 weeks prior to that.  *Id.* at 5:19-6:10.

147.    Plaintiff described the previous stop, noting his displeasure with Hanson asking Plaintiff to put his rear windows down, because of his sick son in the backseat.  *Id.* at 6:14-9:6.

148.    Plaintiff stated that during the incident stop, when Hanson asked Plaintiff for his license and registration, Plaintiff responded by asking why he was pulled over.  *Id.* at 10:12-14.

149.    Plaintiff stated that Hanson told him "Give me your license and registration, then I'll tell you."  *Id.* at 10:14-15.

150. Plaintiff admitted that he did not comply with Hanson's first order to produce his license and registration. *Id.* at 16:1-11.

151. Plaintiff stated that he pulled out his NYPD shield and said "My shield and my badge…I'm on the job." *Id.* at 10:15-19.

152. Plaintiff stated that he told Hanson he should recognize Plaintiff because Hanson pulled him over before. *Id.* at 12:23-25.

153. Plaintiff stated that Hanson said "Are you saying that I -- I know your car and I'm targeting you?" *Id.* at 13:1-6.

154. Plaintiff stated that Hanson explained that Plaintiff was pulled over because he made an illegal left turn. *Id.* at 13:6-10.

155. Plaintiff stated that he told Hanson that he apologized, and said that after the stop had concluded, he would go back to the intersection and check the sign out. *Id.* at 13:15-24.

156. Plaintiff stated that Hanson became increasingly upset, and screamed at him. *Id.* at 14:21, 23:21.

157. Plaintiff stated that he told Hanson that there was a crowd gathering at the school approximately 20 meters away. *Id.* at 14:21-15:1.

158. Plaintiff stated that he told Hanson and Quinn to give him a ticket if he made an illegal left turn. *Id.* at 17:15-18.

159. Plaintiff stated that Hanson offered to call their sergeant, and Plaintiff replied "then call the sergeant." *Id.* at 25:21-24.

160. Plaintiff stated that Quinn then asked for Plaintiff's ID card, which Plaintiff handed to Quinn. *Id.* at 25:24-26:5.

161.     Plaintiff stated that Hanson and Quinn told him to wait in his car, and returned to their vehicle.  *Id.* at 26:5-8.

162.     Plaintiff stated that he got out of his vehicle to give Hanson and Quinn his license and registration so they could write Plaintiff a summons.  *Id.* at 26:10-18.

163.     Plaintiff stated that he told Hanson and Quinn "here's my license and registration. If you want to give me -- give me a ticket. Let me get my ID back."  *Id.* at 28:1-9.

164.     Plaintiff stated that Defendants ordered Plaintiff to get back in his car.  *Id.* at 28:11-13.

165.     Plaintiff stated that he responded by saying "Okay, not a problem, but, where's --  can I get my licen-- can I get my ID back, 'cause if you're giving me a summons, just take the license and registration."  *Id.* at 28:13-15.

166.     Plaintiff stated that Hanson and Quinn repeated their order for Plaintiff to get back in the car.  *Id.* at 28:17-18.

167.     Plaintiff stated that Quinn said she was waiting for the sergeant to arrive, and would not give Plaintiff his *ID.*  *Id.* at 28:20-29:12.

168.     Plaintiff stated that he replied to Quinn, "you sure you want to do that? Alright, you know what, then so be it," and returned to his vehicle.  *Id.* at 29:3-9.

169.     Plaintiff stated that a sergeant arrived, approached Plaintiff's car, and told Plaintiff to drive to the precinct.  *Id.* at 29:13-20.

170.     Plaintiff admitted that on his way to the precinct, he drove past the intersection and saw that Hanson and Quinn were correct about the illegality of the left turn Plaintiff made.  *Id.* at 29:18-20.

171.    Plaintiff admitted that he raised his voice to Hanson during the stop.  *Id.* at 42:9-12.

**D.    Suspension and Modified Assignment**

172.    On March 4, 2016, after the conclusion of the GO-15 hearing and preliminary investigation, Captain Burke of Patrol Borough Manhattan North recommended that Charges & Specifications be preferred against Plaintiff for misconduct on March 4, 2016.  *See* Shaffer Decl. Ex. P.

173.    On March 4, 2016, Plaintiff was suspended without pay, pending determination of disciplinary charges pursuant to NYC Administrative Code § 14-123 and N.Y. Civ. Serv. L. § 75(3-a), by Captain Burke. *See* Shaffer Decl. Exs. P-Q.

174.    On March 4, 2016, at approximately 8:06 pm, Plaintiff's command was notified via the NYPD's internal, "Finest Message" system, that Plaintiff was "suspended from duty without pay pending trial of charges pursuant to the Administrative Code… effective 1500 hours, on 03/04/2016."  *See* Shaffer Decl. Ex. M.

175.    Plaintiff was suspended without pay for eleven days, from March 4, 2016, through March 14, 2016.  *See* Shaffer Decl. Ex. R; Ex. P at 339-340.

176.    On March 15, 2016, Plaintiff returned to work and was placed on modified assignment.  *See* Shaffer Decl. Ex. R.

177.    On March 8, 2016, the incident between Plaintiff and Defendants on March 4, 2016, was assigned for further investigation to NYPD's Internal Affairs Bureau ("IAB"), Bronx Investigations Unit.  *See* Shaffer Decl. Ex. O.

178.    On May 9, 2016, IAB substantiated allegations against Plaintiff for "Dispute – Traffic (Off Duty)" and "Other Dept. Rules/Procedures Violation."  *Id.*

179.    On March 8, 2016, charges and specifications were preferred against Plaintiff by Plaintiff's then-commanding officer, Inspector Fausto B. Pichardo of the 43rd Precinct. *See* Shaffer Decl. Ex. N.

180.    Plaintiff was charged with being "discourteous to on-duty Members of Service in that said Officer was belligerent and yelled expletives at the on-duty Members of Service." *Id.*

181.    Plaintiff was also charged with "fail[ing] and neglect[ing] to comply with the direction of on-duty Members of Service relating to a traffic stop." *Id.*

182.    Those charges and specifications were endorsed by Assistant Chief Larry W. Nikunen of Patrol Borough Bronx on April 22, 2016. *Id.*

183.    Plaintiff was served with charges and specifications on May 2, 2016 at 9:40 am. *Id.*

**E.    NYPD Departmental Trial**

184.    On October 17, 2016, and November 4, 2016 a departmental trial was held regarding the disciplinary charges and specifications against Plaintiff. *See* Shaffer Decl. Ex. P.

185.    Plaintiff was represented by attorney Roger S. Blank during the departmental trial. *Id.*

186.    The Honorable Jeff. S. Adler, Assistant Deputy Commissioner of Trials, presided over Plaintiff's disciplinary trial. *See* Shaffer Decl. Exs. P and Q.

187.    Plaintiff was given the opportunity, through counsel, to offer documentary evidence, confront witnesses for the NYPD, as well as call his own witnesses. *See* Shaffer Decl. Exs. P and Q.

188.    The NYPD called Quinn, Hanson, and Ruffin as witnesses. *See* Shaffer Decl. Ex. P. at 16-98, 103-174.

189.     Plaintiff's attorney cross-examined Quinn, Hanson, and Ruffin. *Id.*

190.     Plaintiff called Derenze as a witness, and Plaintiff testified on his own behalf. *Id.* at 180-294.

### i) Testimony of Quinn

191.     On October 16, 2016, Officer Quinn was called by the NYPD to testify as a witness. *Id.* at 16.

192.     Quinn testified that on March 4, 2016, she and Officer Hanson stopped Plaintiff's vehicle because Plaintiff made an illegal turn. *Id.* at 20:2-25.

193.     Quinn testified that Plaintiff and Hanson began speaking to each other in raised tones. *Id.* at 21:24-22:2.

194.     Quinn testified that Plaintiff said Hanson and Quinn had no reason to pull him over, they should recognize him, and they were harassing him. *Id.* at 22:2-5, 57:21-26.

195.     Quinn testified that Plaintiff was "very angry and he was very combative when my partner was discussing the reason for the car stop with him." *Id.* at 22:5-8.

196.     Quinn testified that Plaintiff said there was no sign in the intersection in question prohibiting him from making a left turn, and that he would investigate for himself whether the sign existed. *Id.* at 57:12 – 58:19.

197.     Quinn testified that Plaintiff and Hanson "kept on going back and forth" about the car stop, and that Plaintiff raised his voice and became very combative with Hanson. *Id.* at 26:19-25.

198.     Quinn testified that she was concerned for Hanson's safety, and moved to the driver's side of the vehicle to "see if I could bring [Plaintiff] a different perspective and kind of calm the situation down." *Id.* at 26:25 – 27:9.

199.    Quinn testified that Plaintiff told Hanson and Quinn to give him a ticket or call their supervisor to the scene.  *Id.* at 27:14-23.

200.    Quinn testified that she and Hanson returned to their vehicle call their supervising sergeant.  *Id.* at 28:4-14.

201.    Quinn testified that approximately five minutes later, while she and Hanson were waiting for a supervisor to arrive, Plaintiff exited his vehicle and walked toward Hanson and Quinn's police vehicle.  *Id.* at 28:23-29:17, 63:3-8.

202.    Quinn testified that she and Hanson instructed Plaintiff to return to his vehicle at least three times, but Plaintiff did not initially comply.  *Id.* at 29:17 - 30:6.

203.    Quinn testified that continued to walk toward their vehicle, attempting to give them his driver's license.  *Id.* at 30:7-12.

204.    Quinn testified that Plaintiff said "give me my fucking ID back," and cursed at least once.  *Id.* at 68:19-25.

205.    Quinn testified that Plaintiff told Quinn and Hanson they would regret this and they don't know who he is.  *Id.* at 30:12-14.

206.    Quinn testified that Plaintiff dropped his wallet and belongings on the ground.  *Id.* at 30:12-17.

207.    Quinn testified that Plaintiff picked his belongings up and returned to his vehicle.  *Id.* at 30:17-20.

208.    Quinn testified that Sergeant Ruffin arrived on the scene and instructed Plaintiff to meet them at the NYPD's 32nd Precinct.  *Id.* at 31:5-14.

**ii) Testimony of Ruffin**

209. On October 16, 2016, Sergeant Ruffin was called by the NYPD to testify as a witness. *Id.* at 78.

210. Ruffin testified that on March 4, 2016, Hanson and Quinn requested, via radio, that Ruffin respond to their location regarding a car stop. *Id.* at 80:4-13.

211. Ruffin testified that Hanson then called her via phone and mentioned that they pulled over a police officer, who requested a supervisor come to the scene, or that he be issued a summons. *Id.* at 81:5-15.

212. Ruffin testified that Hanson mentioned that Plaintiff was giving them a hard time. *Id.* at 81:16-20.

213. Ruffin testified that she arrived at the scene of the traffic stop approximately 10 minutes after her initial communication with Hanson and Quinn. *Id.* at 81:25 – 82:6.

214. Ruffin testified that when she arrived, she instructed Plaintiff to meet her at the 32nd Precinct and gave Plaintiff the address for the precinct. *Id.* at 82:7-83:5.

215. Ruffin testified that when she returned to the precinct, she spoke to the 32nd Precinct's Executive Officer, Captain Lynch about the incident. *Id.* at 83:18-24.

216. Ruffin testified that she informed Captain Lynch that Hanson and Quinn pulled over Plaintiff, and that he was reportedly yelling at them and causing a scene. *Id.* at 83:21-84:4.

217. Ruffin testified that a duty captain arrived at the 32nd Precinct and spoke to Hanson and Quinn about what occurred during the traffic stop. *Id.* at 84:5-85:7.

### iii) Testimony of Hanson

218.    On November 4, 2016, Hanson was called by the NYPD to testify as a witness.  *Id.* at 103.

219.    Hanson testified that on March 4, 2016, at approximately 8:10 am, they observed Plaintiff make an illegal left turn.  *Id.* at 107:5-22.

220.    Hanson testified that he and Officer Quinn pulled over Plaintiff's vehicle in front of 50 West 139th Street, New York, NY.  *Id.* at 107:23-108:4.

221.    Hanson testified that asked Plaintiff to provide his driver's license, insurance information, and registration, but that Plaintiff did not comply with that request.  *Id.* at 109:6-11.

222.    Hanson testified that Plaintiff was very irate that officers stopped him, "kind of like yelling at the top of his lungs," stating that they should know who Plaintiff is, and they had no reason to stop him.  *Id.* at 109:12-17, 113:12-20.

223.    Hanson testified that he informed Plaintiff that he was stopped for making an illegal left turn.  *Id.* at 111:17-24.

224.    Hanson testified that Plaintiff said he had lived in the area his entire life, and there was no sign at the corner in question prohibiting a left turn.  *Id.* at 109:12-20, 111:25-112:5.

225.    Hanson testified that Plaintiff asked Hanson and Quinn to either write him a summons, or call a supervisor to the scene.  *Id.* at 113:21-25.

226.    Hanson testified that Plaintiff provided Quinn with his NYPD identification card.  *Id.* at 114:5-11.

227.     Hanson testified that he and Quinn returned to their police vehicle, and Quinn called their sergeant over the radio.  *Id.* at 114:12-15.

228.     Hanson testified that he called Sergeant Ruffin on the phone, and informed her that they had stopped a police officer who was very irate and who requested that Hanson and Quinn either give him a ticket or call a supervisor to the scene.  *Id.* at 115:12-20.

229.     Hanson testified that while he and Quinn were waiting for Sergeant Ruffin to arrive, Plaintiff exited his vehicle and walked toward their police vehicle.  *Id.* at 116:11-16.

230.     Hanson testified that he told Plaintiff at least twice to get back in his vehicle, but Plaintiff continued to walk toward Hanson and Quinn's vehicle.  *Id.* at 118:24-119:6.

231.     Hanson testified that Plaintiff yelled that Hanson and Quinn would be sorry, and did not know who they were messing with.  *Id.* at 116:16-18.

232.     Hanson testified that Plaintiff dropped his wallet and various identification and credit cards on the ground.  *Id.* at 116:19-24.

233.     Hanson testified that at some point during the stop, a crowd formed and noticed the incident.  *Id.* at 159:21-23.

234.     Hanson testified that when Sergeant Ruffin arrived, Hanson and Quinn gave her Plaintiff's identification card and briefly described what happened.  *Id.* at 118:21-119:2.

235.     Hanson testified that Ruffin walked to Plaintiff's vehicle and told Plaintiff to come back to the 32nd Precinct.  *Id.* at 119:2-4.

236.     Hanson testified that he and Quinn returned to the 32nd Precinct at Sergeant Ruffin's instruction.  *Id.* at 171:10-14.

237. Hanson testified that he and Quinn spoke to Officer Derenze, who was the 32nd Precinct's union delegate on duty at that time, about what happened during the traffic stop. *Id.* at 171:17-172:16.

238. Hanson testified that he had no knowledge of whether Derenze spoke to Plaintiff. *Id.* at 172:17-24.

239. Hanson testified that Derenze never told Hanson Plaintiff's narrative of what happened during the stop. *Id.* at 172:26-174:2.

**iv) Testimony of Derenze**

240. On November 4, 2016, Officer Christopher Derenze was called by Plaintiff to testify as a witness. *Id.* at 179-180.

241. Derenze testified that on March 4, 2016, he was working as a police officer in the NYPD's 32nd Precinct. *Id.* at 181:9-11.

242. Derenze testified that on March 4, 2016, he was a union delegate for the 32nd Precinct. *Id.* at 181:2-4.

243. Derenze testified that he represented Hanson and Quinn as their union delegate on March 4, 2016. *Id.* at 181:12-182:8.

244. Derenze testified that on March 4, 2016, he spoke to Hanson and Quinn at the precinct about what occurred during the traffic stop. *Id.* at 182:18-21.

245. Derenze testified that he also spoke to Plaintiff about what occurred during the traffic stop. *Id.* at 182:18-25.

246. Derenze testified that he did not speak to investigators about his conversations with Hanson, Derenze, and Plaintiff. *Id.* at 182:26-183:4, 183:12-16, 187:22-188:11.

247.    Derenze testified that he did not speak to Hanson and Quinn after speaking to Plaintiff.  *Id.* at 183:17-22.

248.    Derenze testified that he did not tell Hanson and Quinn Plaintiff's "side of what happened."  *Id.* at 183:17-22.

**v)  Testimony of Plaintiff**

249.    On November 4, 2016, Plaintiff testified on his own behalf.  *Id.* at 230.

250.    Plaintiff testified that on March 4, 2016, he was pulled over by Defendants.  *Id.* at 230:24-231:26.

251.    Plaintiff testified that Hanson requested Plaintiff's license and registration, to which Plaintiff replied "may I know why I'm getting pulled over?"  *Id.* at 232:15-25.

252.    Plaintiff testified that Hanson said "[g]ive me your license and registration and then I'll tell you why you're getting pulled over."  *Id.* at 232:23-25.

253.    Plaintiff testified that he pulled his wallet, which contained his NYPD shield as well as his identification and credit cards, out of his pocket.  *Id.* at 233:3-8.

254.    Plaintiff testified that when Plaintiff pulled his wallet out, Hanson stated "so you're a cop."  *Id.* at 235:18-19.

255.    Plaintiff testified that he replied to Hanson, "[y]ou know I'm a cop, you just pulled me over not too long ago."  *Id.* at 235:20-22.

256.    Plaintiff testified that Hanson responded by asking Plaintiff if he was accusing Hanson of harassing or targeting Plaintiff.  *Id.* at 235:23-236:2.

257.    Plaintiff testified that he told Hanson he was not saying Hanson was targeting him, just that he recently pulled Plaintiff over.  *Id.* at 235:25-236:4.

258.    Plaintiff testified that Hanson told Plaintiff he was pulled over for an illegal left turn.  *Id.* at 236:5-10.

259.    Plaintiff testified that he told Hanson he was unaware that the left turn was illegal, and that if it was illegal, he apologized.  *Id.* at 236:11-15.

260.    Plaintiff testified that he also told Hanson he would go back to the intersection and "verify for himself" after they were done with the traffic stop.  *Id.* at 236:15-16.

261.    Plaintiff testified that he was not irate, yelling, or screaming at the top of his lungs during his conversation with Hanson.  *Id.* at 236:25-237:6.

262.    Plaintiff testified that when he said he would "verify for himself" if the turn was illegal after the traffic stop was over, Hanson started screaming at Plaintiff.  *Id.* at 238:9-14.

263.    Plaintiff testified that he told Hanson "I've identified myself. You know I'm a cop. I've apologized to you. You -- you're yelling at me like you're yelling at a perp."  *Id.* at 238:25 – 239:4.

264.    Plaintiff testified that Hanson asked him why he needed to go back and check, and said "No. It's not going to be like the last time. This time you're going to listen to me."  *Id.* at 239:19-25.

265.    Plaintiff testified that he and Hanson argued back and forth for four to five minutes.  *Id.* at 240:3-6.

266.    Plaintiff testified that Quinn walked to the driver's side of the vehicle, and asked Plaintiff for his identification.  *Id.* at 240:7-20.

267.    Plaintiff testified that he gave Quinn his NYPD identification.  *Id.* at 241:7-18.

268.     Plaintiff testified that he told Quinn and Hanson "if you want to give me a summons, then feel free to give me a summons." *Id.* at 242:24-26.

269.     Plaintiff testified that Quinn asked Plaintiff "what about if we call the sergeant?" to which Plaintiff responded "Do whatever you want. Because ultimately you have – you have the authority, you have the final decision." *Id.* at 243:2-5.

270.     Plaintiff testified that Quinn and Hanson walked to their police vehicle and entered the vehicle. *Id.* at 243:5-11.

271.     Plaintiff testified that after five minutes, he exited his vehicle to give Hanson and Quinn his driver's license and registration instead of his NYPD identification. *Id.* at 243:26-244.

272.     Plaintiff testified that he wanted to give Hanson and Quinn his driver's license and registration so they could write him a summons. *Id.* at 244:19-245:5.

273.     Plaintiff testified that he walked closer to the police vehicle, and said "You don't need my [NYPD] ID to give me a summons. Give me back my ID. Here's my license." *Id.* at 245:10-17.

274.     Plaintiff testified that Quinn refused to give Plaintiff his ID, and said she was calling a sergeant. *Id.* at 246:10-17.

275.     Plaintiff testified that he said "[a]re you sure you want to do that? Are you sure you want to do that?" *Id.* at 246:18-22.

276.     Plaintiff testified that at the same time Quinn was saying she would not return Plaintiff's identification, Hanson was telling Plaintiff to get back in his vehicle. *Id.* at 247:3-9.

277. Plaintiff testified that he then dropped his credit cards and other belongings on the ground, and returned to his vehicle. *Id.* at 246:23-247:2.

278. Plaintiff testified that a sergeant arrived at the scene and told Plaintiff to meet him at an address that Plaintiff correctly assumed was a precinct. *Id.* at 251:14-20.

279. Plaintiff testified that he spoke to Officer Derenze at the precinct, and described what occurred during February 2016 and March 4, 2016 traffic stops. *Id.* at 253:18-255:23.

280. Plaintiff testified that he did not see Officer Derenze speak to Hanson or Quinn after speaking to him. *Id.* at 255:24-266:3.

**F.  Determination after Trial**

281. On November 4, 2016, Plaintiff's departmental trial concluded. *Id.* at 319.

282. Assistant Deputy Commissioner of Trials Jeff Adler determined that "[t]his was not a case of harassment or retaliation on the part of the uniformed officers. Rather, the credible evidence has established that this encounter began with a legitimate traffic stop." *See* Shaffer Decl. Ex. Q at p. 11 (bearing Bates No. D 00449).

283. Adler further determined that Plaintiff "did not produce his license and registration when asked, failed to immediately inform the officers that he was a member of service, and argued in a loud voice with the officers about their basis for pulling him over." *Id.*

284. Adler determined that "[b]ecause of [Plaintiff's] conduct, what should have been a routine car stop needlessly escalated into a hostile confrontation between [Plaintiff] and the two officers." *Id.* at p. 13 (bearing Bates No. D 00451).

285. Accordingly, Plaintiff was found guilty of charge 1 for discourtesy. *Id.* at p. 11 (bearing Bates No. D 00449).

286.     Plaintiff was found not guilty of charge 2 for failure to obey a lawful order. *Id.* at 12. (bearing Bates No. D 00450).

287.     Adler recommended that Plaintiff "forfeit the eleven (11) days already served on pre-trial suspension" as a penalty.  *Id.* at p. 13 (bearing Bates No. D 00451).

288.     On December 8, 2016, Plaintiff's attorney Roger Blank submitted a letter to then-NYPD Commissioner James O'Neil pursuant to *Fogel v. Board of Education*, 48 A.D.2d 925 (2d Dep't 1975) requesting that Commissioner O'Neil find Plaintiff not guilty of charge 1 for discourtesy.  *See* Shaffer Decl. Ex. S.

289.     On December 9, 2016, Deputy Commissioner of Trials Maldonado recommended that Plaintiff forfeit the eleven days of service already served on pre-trial suspension.  *See* Shaffer Decl. Ex. T.

290.     On March 20, 2017, Commissioner O'Neil adopted the finding that Plaintiff was guilty of discourtesy and approved the recommendation that Plaintiff forfeit the eleven days of service already served on pre-trial suspension.  *Id.*

291.     Plaintiff never filed an Article 78 special proceeding to challenge the the Commissioner's decision taken as a result of his departmental trial.  *See* Shaffer Decl. Ex. A at 135:5-136:6.

## G.     Commencement of this Action

292.     Plaintiff commenced this action as a *pro se* litigant by filing a Complaint in the United States District Court, Southern District of New York, on June 27, 2017, asserting a single Fourth Amendment claim pursuant to 42 U.S.C. § 1983 against Defendants in connection with the traffic stop occurring on or about February 2016.  *See* ECF Dkt. No. 1

293.     Defendants filed an Answer to the Complaint on November 20, 2017.  *See* ECF Dkt. No. 13.

294.     Plaintiff retained counsel and filed an Amended Complaint on May 22, 2018, asserting claims against Defendants Hanson and Quinn, the City of New York, Sergeant Tomeka Ruffin, Police Officer Christopher Derenze, and John and Jane Does 1 through 10, of bias-based profiling pursuant to the Administrative Code of the City of New York § 14-151(c), deprivation of due process with regard to various liberty and property interests including Plaintiff's "freedom and his career as a police officer, as well as a property interest in his future earnings and the benefits of career advancement," "supervisory liability" against Sergeant Ruffin, and Fourth Amendment unlawful. *See* ECF Dkt. No. 24.

295.     On July 27, 2018, Defendants moved to dismiss Plaintiff's § 1983 due process claims for failure to state a cause of action. *See* ECF Dkt. Nos. 37-39.

296.     On June 25, 2019, the Court granted Plaintiff leave to file a Second Amended Complaint to add claims solely with regard to Plaintiff's "due process claims for damage to his good name and reputation – his so called stigma plus claim – and his due process claim that rests on his suspension without pay because of the alleged deceit of Derenze, Hanson and Donohue during the GO-15 and disciplinary hearing." *See* ECF Dkt. No. 64 at p. 20:14-21

297.     The Court stated that it was "extremely skeptical" of Plaintiff's purported argument that "the mere fact that a witness lied at a disciplinary hearing renders the hearing Constitutionally inadequate." *Id.* at p. 17:20 – 18:2.

298.     The Court stated that it was "highly unlikely, that Plaintiff will be able to plead a plausible due-process claim." *Id.* at 18:21-25.

299.     The Court denied Plaintiff leave to amend with regard to "his due process claim involving restraints on his physical freedom and involving harm to his promotion potential." *Id.* at p. 20:21-23.

300.    The Court held that "Plaintiff may not premise the second element of his stigma-plus claim on his reassignment to Viper 8, his inability to seek overtime, his placement on modified duty, or the loss of opportunities for promotion." *Id*. at p. 15:7-11.

301.    The Court also dismissed Plaintiff's § 1983 claims against the City of New York. *Id*. at p. 20:14-25.

302.    On July 26, 2019, Plaintiff filed a Second Amended Complaint, withdrawing all claims against Officer Derenze. *See* ECF Dkt. No. 66.

303.    On August 16, 2019, Defendants filed an Answer to the Second Amended Complaint. *See* ECF Dkt. No. 67.

304.    On April 15, 2020, plaintiff's causes of action pursuant to the Fourth Amendment for unlawful search and seizure, supervisory liability as well as for "bias-based policing," were withdrawn and voluntarily dismissed with prejudice by stipulation so-ordered on April 15, 2020. *See* ECF Dkt. No. 97.

305.    In addition, Plaintiff voluntarily dismissed with prejudice all claims against former defendants Ruffin and John and Jane Doe 1-10. *Id.*

Dated:    New York, New York
           August 27, 2020

                    **JAMES E. JOHNSON**
                    Corporation Counsel of the
                      City of New York
                    Attorney for Defendants
                    100 Church Street, Room 2-125
                    New York, New York 10007-2601
                    (212) 356-1105
                    jshaffer@law.nyc.gov

               By:    */s/ J. Kevin Shaffer*
                      J. Kevin Shaffer
                      Assistant Corporation Counsel