17 Civ. 4835 (VEC) (JLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO DOLCINE,

Plaintiff,

POLICE OFFICER RICHARD HANSON and POLICE
OFFICER KERIN DONAHUE,

Defendants.

## **AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

***JAMES E. JOHNSON***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-125*
*New York, New York  10007*

*Of Counsel:  J. Kevin Shaffer*
*Tel.:  (212) 356-1105*
*Matter No.:  2017-054751*

Bruce Rosenbaum,
J. Kevin Shaffer,
  Of Counsel.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF FACTS ......................................................................... 3

PROCEDURAL HISTORY......................................................................... 3

ARGUMENT .......................................................................................... 5

    POINT I ............................................................................................. 5

    DEFENDANTS HANSON AND QUINN ARE IMMUNE
    FROM LIABILITY FOR THEIR TESTIMONY AT
    PLAINTIFF'S DISCIPLINARY TRIAL AND DURING
    THEIR GO-15 INTERVIEWS ................................................................ 5

    POINT II ............................................................................................ 9

    PLAINTIFF IS COLLATERALLY ESTOPPED FROM CONTESTING THE
    FACTUAL FINDINGS FROM HIS DISCIPLINARY TRIAL ........................... 9

    POINT III .......................................................................................... 11

    PLAINTIFF WAS NOT DEPRIVED OF A PROPERTY INTEREST IN HIS
    CONTINUED EMPLOYMENT WITHOUT DUE PROCESS ........................ 11

        A.   Plaintiff Received Due Process During His
            GO-15 Hearing And NYPD Disciplinary Trial................................ 12

        B.   Plaintiff Had An Adequate Post-Deprivation
            Remedy ................................................................................. 17

    POINT IV........................................................................................... 19

    PLAINTIFF WAS NOT DEPRIVED OF A LIBERTY INTEREST IN HIS
    REPUTATION WITHOUT DUE PROCESS ................................................ 19

        A.   Defendants' Statements Were Neither False
            Nor Stigmatizing .................................................................... 20

        B.   Defendants' Statements To The GO-15
            Investigators Were Not Published ............................................... 23

CONCLUSION....................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. N.Y. State Educ. Dep't,*
  752 F. Supp. 2d 420 (S.D.N.Y. 2010)......................................................................21

*Anderson v. Recore*,
  317 F.3d 194 (2d Cir. 2003).......................................................................................9

*Birmingham v Ogden*,
  70 F. Supp. 2d 353 (S.D.N.Y. 1999).................................................................15, 17

*Board of Regents v. Roth*,
  408 U.S. 564 (1972)..................................................................................................10

*Brevot v. New York City Dept. of Educ.*,
  299 F App'x 19 (2d Cir. 2008) .................................................................................25

*Briscoe v. Lahue*,
  460 U.S. 325 (1983)....................................................................................................5

*Burkybile v. Bd. of Educ.*,
  411 F.3d 306 (2d Cir. 2005)........................................................................................9

*Butz v. Economou*,
  438 U.S. 478 (1978)....................................................................................................5

*Colantonio v. Mercy Med. Ctr.*,
  73 A.D.3d 966 (2d Dep't 2010) ...............................................................................23

*Chandok v. Klessig*,
  632 F.3d 803 (2d Cir. 2011).......................................................................................8

*Cheeseboro v. Commr. of Labor*,
  84 A.D.3d 1635 (3d Dep't 2011) ...............................................................................8

*Donato v. Plainview-Old Bethpage Sch. Dist.*,
  96 F.3d 623 (2d Cir. 1996).......................................................................................21

*Faghri v. Univ. of Conn.*,
  621 F.3d 92 (2d Cir. 2010)..................................................................................10, 11

*Frederique v. County of Nassau*,
  168 F. Supp. 3d 455 (E.D.N.Y. 2016) .......................................................................8

*Garcia v. Yonkers Bd. of Educ.*,
   2020 U.S. App. LEXIS 4803 (2d Cir. Feb. 14, 2020) ............................................................9

*Grillo v. N.Y.C. Transit Auth.*,
   291 F.3d 231 (2d Cir. 2002)................................................................................................16

*Herlihy v. City of New York*,
   654 F App'x 40 (2d Cir 2016) ............................................................................................17

*Johnston v Town of Orangetown*,
   562 F App'x 39 (2d Cir. 2014) ...............................................................................15, 16, 17

*Kuczinski v. City of New York,*
   352 F. Supp. 3d 314 (S.D.N.Y. 2019)..................................................................................8

*Leary v. Civ. Serv. Emples. Assn.*,
   2012 U.S. Dist. LEXIS 65164 (S.D.N.Y. May 9, 2012),
   *aff'd,* 516 F. App'x 42 (2d Cir. 2013)................................................................................12

*Lewis v. City of New York*,
   18 F. Supp. 3d 229 (E.D.N.Y. 2014) ....................................................................................6

*Locurto v. Safir*,
   264 F.3d 154 (2d Cir 2001)............................................................................................12, 17

*Longo v. Suffolk County Police Dept.*,
   429 F. Supp. 2d 553 (E.D.N.Y. 2006) ................................................................................12

*Oakley v. Dolan,*
   2020 U.S. Dist. LEXIS 28267 (S.D.N.Y. Feb. 19, 2020)....................................................23

*O'Connor v Pierson,*
   426 F.3d 187 (2d Cir. 2005)................................................................................................24

*Pisani v. Westchester County Health Care Corp.*,
   424 F. Supp. 2d 710 (S.D.N.Y. 2006)..................................................................................21

*Pearson v. Callahan*
   555 U.S. 223 (2009).............................................................................................................9

*Rehberg v. Paulk*,
   566 U.S. 356 (2012)...........................................................................................................5

*Richardson v. Farina,*
   2017 U.S. Dist. LEXIS 26280 (S.D.N.Y. Feb. 23, 2017)....................................................24

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
   42 N.Y.2d 369 (1977), *cert. denied* 434 U.S. 969)..........................................................22-23

*Rolon v Henneman*,
    517 F.3d 140 (2d Cir. 2008) (Sotomayor, J.)........................................................5, 6

*Russell v. Hodges*,
    470 F.2d 212 (2d Cir. 1972)........................................................................................24

*Ryan v. NY Tel. Co.*,
    62 N.Y.2d 494 (1984) ..............................................................................................8, 9

*Segal v. City of New York*,
    459 F.3d 207 (2d Cir. 2006)........................................................................................18

*Sharpe v. City of New York*,
    2013 U.S. Dist. LEXIS 75094 (E.D.N.Y. May 29, 2013),
    *aff'd* 560 F. App'x 78 (2014)......................................................................................21

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986) ..........................................................................................22-23

*Valmonte v. Bane*,
    18 F.3d 992 (2d Cir. 1994)..........................................................................................18

*Vega v. Lantz*,
    596 F.3d 77 (2d Cir. 2010)..........................................................................................18

*Wallace v. Kelly*,
    2013 U.S. Dist. LEXIS 185518 (S.D.N.Y. Dec. 3, 2013) ........................................12

**Statutes**

42 U.S.C. § 1983 ................................................................................................3, 6, 7, 10

N.Y. Civ. Serv. L. § 75 ...........................................................................................11, 12

Administrative Code of the City of New York § 14-115....................................................6

Rules of the City of New York Title 38, Chapter 15 ........................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

RICARDO DOLCINE,

                                   Plaintiff,

                                                        17 Civ. 4835 (VEC) (JLC)

                    -against-

POLICE OFFICER RICHARD HANSON and
POLICE OFFICER KERIN DONAHUE,

                                   Defendants.
------------------------------------------------------------------ x

## AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff Ricardo Dolcine ("Plaintiff"), a police officer with the New York City Police Department ("NYPD"), commenced this action on June 27, 2017, claiming that Defendants Richard Hanson (sued herein as "Police Officer Richard Hanson" and hereinafter "Hanson"), and Kerin Quinn (sued herein as "Police Officer Kerin Donahue" and hereinafter "Quinn"), without due process of law, deprived him of a liberty interest in his good name and reputation (i.e. a "stigma plus" claim) and denied him a property interest in his paid employment as a police officer, in violation of the Due Process Clause of the Fourteenth Amendment[1].  The sole factual premise in support of these specious due process claims are set forth in paragraph 48 of the Second Amended Complaint.  *See* ECF Dkt. No. 66 at ¶ 48.

---

[1] Plaintiff also originally brought causes of action pursuant to the Fourth Amendment for unlawful search and seizure, supervisory liability as well as for "bias-based policing," which Plaintiff withdrew and voluntarily dismissed with prejudice by stipulation so-ordered on April 15, 2020.  *See* ECF Dkt. No. 97.  In addition, Plaintiff voluntarily dismissed with prejudice all claims against former defendants Ruffin and John and Jane Doe 1-10.  *Id.*

Despite the Court's expressions of extreme skepticism regarding Plaintiff's due process claims (ECF Dkt. No. 64 at 17:12 – 18:2), and that it was "highly unlikely, that Plaintiff will be able to plead a plausible due-process claim" (ECF Dkt. No. 64 at 18:21-25), Plaintiff doggedly insisted upon continuing to press these meritless and frivolous claims, thereby prolonging this litigation and necessitating Defendants' counsel to expend significant time and effort in drafting this motion for summary judgment.

Defendants submit this memorandum of law in support of their motion for an order pursuant to Federal Rule of Civil Procedure 56 granting summary judgment dismissing all of Plaintiff's remaining claims.  As explained in greater detail below, plaintiff's allegations in support of his remaining claims are factually incorrect and, even if assumed to be accurate, fail to make out cognizable claims of denial of a property or liberty interest by defendants Hanson and Quinn.  First, Defendants are immune from liability under 42 U.S.C. § 1983 ("§ 1983") for their testimony at Plaintiff's NYPD disciplinary trial and during their GO-15 interviews  Second, Plaintiff is collaterally estopped from reasserting, in this action, the factual findings from the underlying disciplinary trial against Plaintiff, wherein he was found guilty of "insubordination." Third, Plaintiff was not deprived of a property interest in his continued, paid employment, without due process of law, because the pre-deprivation and post-deprivation process provided to Plaintiff was more than sufficient to satisfy Constitutional due process standards.  Indeed, neither defendant Hanson nor Quinn made any of the decisions challenged herein regarding Plaintiff's suspension him without pay for eleven days as a result of his proven misconduct.  Fourth, Plaintiff was not deprived of a liberty interest in his g reputation without due process of law, because Defendants' statements in question were neither false nor stigmatizing, Defendants' statements during the GO-15 investigatory interview and their testimony during Plaintiff's

Departmental trial were not publicized by Defendants, and Plaintiff had the right to a post-deprivation Article 78 special proceeding, but failed to avail himself of that available process.

## STATEMENT OF FACTS

The Court is respectfully referred to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, dated June 12, 2020, ("Def. 56.1"), the Declaration of Assistant Corporation Counsel J. Kevin Shaffer, dated June 12, 2020, ("Shaffer Decl."), and the supporting evidence cited to therein for a statement of pertinent and material facts.

## PROCEDURAL HISTORY

Plaintiff commenced this action *pro se* on June 27, 2017, asserting Fourth Amendment unlawful seizure claims pursuant to § 1983 against Defendants regarding the traffic stop occurring on or about February 2016.  *See* ECF Dkt. No. 1.  On May 18, 2018, Plaintiff filed an Amended Complaint, with the assistance of counsel, asserting § 1983 claims against Defendants Hanson and Quinn, the City of New York, Sergeant Tomeka Ruffin, Police Officer Christopher Derenze, and John and Jane Does 1-10.  Plaintiff's Amended Complaint asserted claims of bias-based profiling pursuant to the Administrative Code of the City of New York § 14-151(c), deprivation of due process with regard to various liberty and property interests, "supervisory liability" against Ruffin, and Fourth Amendment unlawful seizure claims relating to the February 2016 and March 4, 2016 traffic stops.  *See* ECF Dkt. No. 22.  On July 27, 2018, Defendants moved to dismiss Plaintiff's § 1983 due process claims for failure to state a cause of action.  *See* ECF Dkt. Nos. 37-39.

On June 25, 2019, the Court granted Plaintiff leave to file a Second Amended Complaint to add claims solely with regard to Plaintiff's "due process claims for damage to his good name and reputation – his so called stigma plus claim – and his due process claim that rests on his suspension without pay because of the alleged deceit of Derenze, Hanson and Donohue

- 3 -

during the GO-15 and disciplinary hearing." *See* ECF Dkt. No. 64 at p. 20:14-21.  The Court denied Plaintiff leave to amend with regard to "his due process claim involving restraints on his physical freedom and involving harm to his promotion potential." *Id.* at p. 20:21-23.  The Court held that "Plaintiff may not premise the second element of his stigma-plus claim on his reassignment to Viper 8, his inability to seek overtime, his placement on modified duty, or the loss of opportunities for promotion." *Id.* at p. 15:7-11.  The Court also dismissed Plaintiff's § 1983 claims against the City of New York. *Id.* at p. 20:14-25.  On July 26, 2019, Plaintiff filed a Second Amended Complaint, withdrawing all claims against Officer Derenze. *See* ECF Dkt. No. 66.  By stipulation so-ordered on April 15, 2020, Plaintiff withdrew and voluntarily dismissed with prejudice his causes of action pursuant to the Fourth Amendment for unlawful search and seizure, supervisory liability as well as for "bias-based policing." *See* ECF Dkt. No. 97.  In addition, Plaintiff voluntarily dismissed with prejudice all claims against former defendants Ruffin and John and Jane Doe 1-10. *Id.*

Accordingly, the two remaining issues for summary judgment are: **(1)** whether Plaintiff was deprived of a property interest by either Officer Hanson or Quinn in his being employed as a paid as an active-duty police officer, without due process of law, when he was suspended for 11 days without pay; and **(2)** whether Plaintiff was deprived of a liberty interest in his reputation, without due process of law, because of the allegedly false remarks made by Officers Quinn and Hanson during Plaintiff's GO-15 hearing and NYPD disciplinary trial, and his 11-day suspension without pay (otherwise known as a "stigma-plus" claim).

## ARGUMENT

### POINT I

### DEFENDANTS HANSON AND QUINN ARE IMMUNE FROM LIABILITY FOR THEIR TESTIMONY AT PLAINTIFF'S DISCIPLINARY TRIAL AND DURING THEIR GO-15 INTERVIEWS

First, Defendants Hanson and Quinn have absolute testimonial immunity from liability regarding their statements during Plaintiff's disciplinary trial.  It is well established that "a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012).  Absolute immunity for testifying witnesses applies not only to formal judicial proceedings such as trials, but also to administrative hearings, arbitrations, and other proceedings which sufficiently share the characteristics of the formal judicial process.  *See Butz v. Economou*, 438 U.S. 478, 512-13 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages.").  Absolute immunity extends to police officers testifying as witnesses, because an "immunity analysis rests on functional categories, not on the status of the defendant.  A police officer on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury." *Briscoe v. Lahue*, 460 U.S. 325, 342 (1983).

The Second Circuit has specifically held that police officers who testify as witnesses in internal, disciplinary proceedings are protected by absolute immunity.  *See Rolon v Henneman*, 517 F.3d 140, 146 (2d Cir. 2008) (Sotomayor, J.); *Lewis v. City of New York*, 18 F. Supp. 3d 229, 238 (E.D.N.Y. 2014).  In *Rolon*, the Second Circuit held that a defendant police

officer was absolutely immune from liability under § 1983 for his testimony against another officer at a disciplinary hearing which "encompassed an adequate number of safeguards so as to ensure that its function and the function of the witnesses sufficiently mirrored the judicial process." *Rolon*, 517 F.3d at 146.  The Court reasoned that because the defendant "performed substantially the same function as witnesses in judicial proceedings with nearly identical procedural safeguards: he took an oath, offered testimony, responded to questions on direct and cross-examination, and could have been prosecuted for perjury," he was "absolutely immune for his testimony n the arbitration proceedings *Id.* at 146-147 (quoting *Briscoe*)

Here, Defendants Hanson and Quinn are absolutely immune from liability under § 1983 for their testimony as witnesses at Plaintiff's disciplinary trial because they performed substantially the same functions as witnesses in judicial proceedings, with nearly identical procedural safeguards.  NYPD disciplinary trials are governed by Title 38, Chapter 15 of the Rules of the City of New York, and New York City Administrative Code § 14-115.  Under these rules, NYPD employees are served with formal charges and given an opportunity to respond (§ 15-03(b)), can engage in pre-hearing discovery (15-03(f)), can make pre-hearing motions (§ 15-03(g)), can be represented by counsel (15-04(b)), have the right to subpoena witnesses (15-04(b)), present opening and closing statements (15-04(e)(3)), and call witnesses and present evidence on their own behalves, as well as cross-examine opposing witnesses. (15-04(e)(2)). Defendants took an oath and testified under penalty of perjury.  *See* Shaffer Decl. Ex. P at pp. 16:17-25, 103:18-24, 179:21-25, 224:22-26.   As such, the NYPD's Department Advocate's Office trial process sufficiently mirrors the procedural safeguards of formal judicial proceedings, such that Defendants are protected by absolute immunity from liability under § 1983 for their testimony at Plaintiff's disciplinary trial.  Accordingly, any § 1983 due process claims against

Defendants Hanson and Quinn stemming from their testimony at Plaintiff's NYPD disciplinary trial are barred by the doctrine of absolute immunity, and should be dismissed with prejudice.

Defendants' GO-15 statements are similarly protected by absolute immunity, as those statements were made under circumstances established to ensure their truthfulness under NYPD Patrol Guide Procedures 203-08 (NYPD policy on making false or misleading statements), *see* Shaffer Decl. Ex. V, and 206-13 (procedure governing interrogation of members of the service), Shaffer Decl. Ex. W.  Defendants, who were required to give these statements under Patrol Guide 206-13, were informed of their duty to truthfully answer questions, and acknowledged that they were aware of Patrol Guide Procedures establishing that they would be subject to disciplinary action by the NYPD if they knowingly made false statements.  *See* Shaffer Decl. Exs. H-I, V-W.  Thus, the GO-15 interview process sufficiently mirrors the procedural safeguards of judicial proceedings such that Defendants are absolutely immune for their statements during the GO-15 interviews.

Additionally, Defendants' GO-15 statements and disciplinary trial testimony are subject to a qualified privilege from liability.  "A statement is generally subject to a qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral," as well as when "a communication [is] made by one person to another upon a subject in which both have an interest."  *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011) (internal quotes omitted).  This qualified privilege "may be overcome by a showing either of 'actual' malice (i.e., knowledge of the statement's falsity or reckless disregard as to whether it was false) or of common-law malice," i.e. "spite or ill will."  *Id.* (citation omitted).  Here, during both their GO-15 interviews and their testimony at Plaintiff's disciplinary trial, Defendants Hanson and Quinn were undoubtedly acting in discharge of their duties as police officers, as well as

communicating with NYPD officials who shared an interest with Defendants in reporting Plaintiff's misconduct on March 4, 2016. *See Kuczinski v. City of New York* 352 F. Supp. 3d 314, 325-326 (S.D.N.Y. 2019) (conferring immunity for statements made in connection with NYC Department of Investigation investigation); *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 488 (E.D.N.Y. 2016) (defendant police officer's intra-department report to internal affairs about plaintiff's arrest and subsequent prosecution was protected by qualified privilege). However, there is no evidence that Defendants Hanson and Quinn uttered a false statement about Plaintiff during their GO-15 interviews, let alone acted with actual or common-law malice.

At a minimum, Defendants Hanson and Quinn are entitled to qualified immunity in connection with their GO-15 statements, as Defendants did not violate a clearly established statutory or constitutional right of the Plaintiff.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted).  For the purposes of qualified immunity, "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quotation omitted)  Here, even assuming *arguendo* that Plaintiff could prove Defendants made false statements during their GO-15 interviews, it is by no means clearly established that Defendants Hanson and Quinn could deprive Plaintiff of a constitutional due process right merely by making such statements. Accordingly, Defendants are immune from liability under § 1983 for their testimony at Plaintiff's disciplinary trial, and for their statements during GO-15 interviews.

**POINT II**

**PLAINTIFF IS COLLATERALLY ESTOPPED FROM CONTESTING THE FACTUAL FINDINGS FROM HIS DISCIPLINARY TRIAL**

Plaintiff is collaterally estopped from reasserting, in this action, the factual findings of NYPD Assistant Deputy Commissioner of Trials ("ADCT") Jeff Adler in the underlying disciplinary trial, finding Plaintiff guilty of "insubordination," and recommending that Plaintiff forfeit eleven days already served on unpaid, pretrial suspension. *See* Shaffer Decl. Ex. Q.

Under New York law, the doctrines of res judicata and collateral estoppel "give conclusive effect to the quasi-judicial determinations of administrative agencies when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." *Ryan v. NY Tel. Co.*, 62 N.Y.2d 494, 499 (1984) (internal citations omitted). Collateral estoppel, also known as issue preclusion, is "a narrower species of *res judicata*, [which] precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Id.* at 500.

Thus, collateral estoppel precludes a party from re-litigating issues previously decided in a judicial or quasi-judicial proceeding, where: (1) the issue was "material to the first action or proceeding and essential to the decision rendered therein;" (2) the issue is "the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first;" and (3) the party sought to be precluded had "a full and fair opportunity in the prior administrative proceeding to

contest the decision now said to be controlling." *Id.* at 500-501. "In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding." *Id.* at 501.

In particular, under New York law, collateral estoppel applies to findings made by administrative officers after conducting employee disciplinary hearings. *See Cheeseboro v. Commr. of Labor*, 84 A.D.3d 1635, 1636 (3d Dep't 2011). An individual is collaterally estopped from re-litigating an ALJ's factual determinations from a disciplinary proceeding, and the preclusive effect of those factual determinations can often be fatal to a plaintiff's subsequent claims. *Garcia v. Yonkers Bd. of Educ.*, 2020 U.S. App. LEXIS 4803, at **4-5 (2d Cir. Feb. 14, 2020); *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 314 (2d Cir. 2005).

Plaintiff cannot seriously contest that he was denied a "full and fair opportunity to litigate" the factual findings of misconduct from his underlying disciplinary trial. *Ryan*, 62 N.Y.2d at 501. Plaintiff was represented by counsel, had the opportunity to question NYPD's witnesses, present his own witnesses and testify on his own behalf, submit evidence in support of his defense, and did not subsequently appeal NYPD's decision to adopt ADCT Adler's report and recommendation that Plaintiff forfeit eleven days already served on unpaid, pretrial suspension. *See* Def 56.1 at ¶¶ 185, 187-190, 249-280, 291. Thus, Plaintiff was afforded a full and fair opportunity to litigate the factual findings made in his disciplinary proceeding.

Plaintiff's is collaterally estopped from re-litigating the factual determinations of ADCT Adler regarding Plaintiff's misconduct. These substantiated factual findings of misconduct include, but are not limited to:

Officer Donahue [Quinn] came across as objective and professional in her testimony, which essentially corroborated the account of Officer Hanson regarding how [Plaintiff] was speaking in a combative manner…

* * *

[T]he credible evidence has established that this encounter began with a legitimate traffic stop. [Plaintiff] did not produce his license and registration when asked, failed to immediately inform the officers that he was a member of service, and argued in a loud voice with the officers about their basis for pulling him over. Because of [Plaintiff's] conduct, what should have been a routine car stop needlessly escalated into a hostile confrontation between [Plaintiff] and the two officers.

*See* Shaffer Decl. Ex. Q at pp.11-13 (bearing Bates Nos. D 00449-00451).  Thus, Plaintiff is collaterally estopped from contesting the factual findings of ADCT Adler from the underlying disciplinary trial, including but not limited to those facts listed above.

## POINT III

### PLAINTIFF WAS NOT DEPRIVED OF A PROPERTY INTEREST IN HIS CONTINUED EMPLOYMENT WITHOUT DUE PROCESS

To establish a § 1983 claim based on an alleged denial of procedural due process, a plaintiff must show that he possessed a liberty or property interest protected by the Constitution, and that he was deprived of that liberty or property interest without due process. *See Board of Regents v. Roth,* 408 U.S. 564 (1972).  In this case, there are two Due Process Clause interests cognizable in this case – a property interest in Plaintiff's continued paid employment and a liberty interest in Plaintiff's reputation.  With respect to either interest, the process provided Plaintiff was more than sufficient to satisfy constitutional due process standards. *See Faghri v. Univ. of Conn.*, 621 F.3d 92, 10 (2d Cir. 2010) ("Even upon termination

of an employee having a property interest in his position, the employee is entitled only to 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'") (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532,546 (1985)).

## A.     Plaintiff Received Due Process During His GO-15 Hearing And NYPD Disciplinary Trial

Plaintiff's GO-15 hearing and disciplinary trial both satisfied Constitutional due process requirements.  During both his GO-15 hearing and subsequent disciplinary trial, Plaintiff was given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Faghri,* 621 F.3d at 10 (2d Cir. 2010); *see also* Shaffer Decl. Exs. I, K, N.

First, Plaintiff's GO-15 hearing satisfied Constitutional due process requirements. Plaintiff was officially questioned pursuant to NYPD Patrol Guide Procedures 203-08 and 206-13.  *See* Shaffer Decl. Exs. V-W.  He was represented by an attorney and a delegate from the Police Benevolent Association.  *See* Def. 56.1 at ¶ 142.  Plaintiff stated that he was satisfied with his representation, and had adequate time to discuss the allegations with his representation.  *Id.* at ¶ 143.  Plaintiff was informed at the beginning of the questioning that he was the subject of an official departmental investigation, and that any statements could be used against him in relation to subsequent disciplinary charges by the NYPD.  *Id.* at ¶ 144.  Plaintiff provided his account of what occurred, and his attorney repeatedly interjected during the questioning.  *Id.* at ¶¶ 145-171; *see also* Shaffer Decl. Ex. J. at pp. 19-21, 31, 35, 41-42, 49, 53.  At the conclusion of the GO-15 hearing and the NYPD's preliminary investigation, Plaintiff was suspended without pay pursuant to N.Y. Civ. Serv. L. § 75, which expressly authorizes the NYPD to suspend its police officers for up to thirty days without pay, pending determination of disciplinary charges and

specifications relating to an officer's misconduct.  *See* N.Y. Civ. Serv. L. § 75 ("Pending the hearing and determination of charges of incompetency or misconduct, a police officer employed by the police department of the city of New York may be suspended without pay for a period not exceeding thirty days).

Moreover, Plaintiff's disciplinary trial satisfied due process requirements.  N.Y. Civil Service Law § 75 provides that an employee facing disciplinary action shall be given "written notice [of disciplinary charges] and of the reasons therefor, shall be furnished a copy of the charges preferred against him and shall be allowed at least eight days for answering the same in writing."  *See* N.Y. Civ. Serv. L. § 75(2).  It also states that "the person or persons holding such [a disciplinary] hearing shall, upon the request of the person against whom charges are preferred, permit him to be represented by counsel, or by a representative of a recognized or certified employee organization, and shall allow him to summon witnesses in his behalf.  The burden of proving incompetency or misconduct shall be upon the person alleging the same.  Compliance with technical rules of evidence shall not be required.  *Id*.

Courts have repeatedly held that the procedural requirements of Section 75, accompanied by the availability of a post-deprivation Article 78 proceeding, satisfy Constitutional due process requirements.  *See Locurto v. Safir*, 264 F.3d 154, 173-175 (2d Cir 2001); *see also Leary v. Civ. Serv. Emples. Assn.*, 2012 U.S. Dist. LEXIS 65164, at *29 (S.D.N.Y. May 9, 2012), *aff'd,* 516 F. App'x 42, 43 (2d Cir. 2013) ("The procedures set forth in Section 75, along with the availability of an Article 78 proceeding to challenge the outcome, meet the requirements of the Due Process Clause."); *Wallace v. Kelly*, 2013 U.S. Dist. LEXIS 185518, at *17 (S.D.N.Y. Dec. 3, 2013) ("the structure and procedures for NYPD disciplinary hearings are permitted under New York law and, because of the opportunity for post-deprivation

relief, discussed below, do not offend federal due process rights"); *Longo v. Suffolk County Police Dept.*, 429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006) ("Courts in this circuit as well as the Second Circuit Court of Appeals have held, clearly and repeatedly, that the combination of Section 75 and 78 provide a terminated public employee with remedies that are consistent with the requirements of the due process clause of the Constitution.") (collecting cases).

Here, Plaintiff's disciplinary trial complied with Civil Service Law § 75 and satisfied Constitutional due process requirements.  Plaintiff was provided with written notice of the charges and specifications against him on May 2, 2016, nearly two months before Plaintiff's first pre-trial appearance regarding those charges, and over five months before Plaintiff's disciplinary trial actually commenced.  *See* Def. 56.1 at ¶¶ 183-184.  Plaintiff was represented during the disciplinary trial by an attorney, called a witness and testified on his own behalf, questioned the NYPD's witnesses, and submitted evidence in support of his defense.  *Id.* at ¶¶ 184, 187, 189-190; *see also* Shaffer Decl. Ex. P.   As argued *infra* Point III.B, Plaintiff had the opportunity to challenge the outcome of his disciplinary trial through an Article 78 proceeding, but failed to avail himself of that opportunity.   Accordingly, Plaintiff's departmental trial complied with Constitutional due process requirements.

Plaintiff's only contentions as to why he was deprived of due process during his GO-15 hearing and departmental trial are that: **(a)** before his GO-15 hearing, a union delegate allegedly misrepresented the nature of who he represented for the hearing, causing Plaintiff to tell the delegate what happened before the hearing began; and **(b)** Defendants allegedly lied during the GO-15 hearing and the subsequent disciplinary trial about the incident in question. *See* ECF Dkt. No. 66 at ¶¶ 36-43, 48 (and all its subparts), 61-62.  While Plaintiff has not and

cannot prove the truth of either of these assertions, neither would establish as a matter of law that Plaintiff was deprived of due process during his GO-15 hearing.

First, Plaintiff claims that Police Officer Derenze approached him and said he was a union delegate, attempting to resolve the dispute before it went any further. *See* Def. 56.1 at ¶¶ 52-54. Plaintiff contends that he told Derenze his side of the story, and claims that Derenze conveyed Plaintiff's version of events to the GO-15 hearing board before Plaintiff was questioned. *See* ECF Dkt. No. 66 at ¶¶ 37-41. Plaintiff has no evidence that this occurred, other than his own speculation. Plaintiff admits that he never saw Derenze speak to Defendants after he had a discussion with Derenze. *See* Def. 56.1 at ¶¶ 60. Plaintiff contends that because the GO-15 board's questions were "very specific," that they must have been informed of what Plaintiff was going to say before he said it. *See* ECF Dkt. No. 66 at ¶¶ 42-43.

Setting aside the purely speculative nature of this allegation, Plaintiff has not and cannot articulate any reason why this would have deprived him of due process during his GO-15 hearing. Plaintiff does not claim that he revealed any inculpatory or incriminating information to Derenze. On the contrary, Plaintiff states that did not admit to any wrongdoing to Derenze, or tell Derenze any information other than what Plaintiff claims to be a true version of what occurred during the traffic stops in question. *See* Def. 56.1 at ¶¶ 57-58. Plaintiff provides no legally-cognizable rationale for why he was deprived of due process by the GO-15 board allegedly knowing Plaintiff's version of events before Plaintiff was questioned.

Second, Plaintiff's self-serving contention that Defendants lied during his GO-15 hearing and disciplinary trial fails to establish that Plaintiff was deprived of due process. As the Court acknowledged during oral argument regarding Defendants' Motion to Dismiss, "[i]f Plaintiff's theory were correct, any time there is a swearing match at the disciplinary hearing

stage and the administrative judge resolves the credibility dispute in favor of disciplining an officer, that officer has a federal due process claim." *See* ECF Dkt. No. 64 at pp. 17:22 – 23:2. Even assuming the truth of Plaintiff's allegation that Defendants lied during Plaintiff's GO-15 hearing or disciplinary trial, Plaintiff cannot prove that he was denied due process as a result. ADCT Adler, who presided over Plaintiff's disciplinary trial, expressly assessed the credibility of Defendants as witnesses in his report and recommendation. *See* Shaffer Decl. Ex. Q at p. 11 (bearing Bates No. D 00449) ("In seeking to resolve the conflicting accounts provided by Officer Hanson and [Plaintiff], this tribunal looks to the testimony of Officer Donahue [Quinn].  On the one hand, counsel was correct in noting that Officer Donahue [Quinn] was Officer Hanson's partner at the time, and as such, potentially biased in his favor.  Nevertheless, Officer Donahue [Quinn] came across as objective and professional in her testimony, which essentially corroborated the account of Officer Hanson regarding how [Plaintiff] was speaking in a combative manner.")

Courts in this Circuit have addressed similar allegations, and have declined to hold that a witness allegedly lying at a disciplinary hearing itself establishes a deprivation of due process. *See Johnston v Town of Orangetown*, 562 F App'x 39, 40-41 (2d Cir. 2014) ("[plaintiff] was afforded a pre-termination hearing at which he was represented by counsel and he was given the chance to put forth arguments and evidence as to why he should not be terminated. Thereafter, he had the opportunity to avail himself of the review process pursuant to New York C.P.L.R. Article 78.  Even considering Johnston's claim that witnesses at the hearing lied, this is sufficient to satisfy the requirements of the Due Process Clause.); *Birmingham v Ogden*, 70 F. Supp. 2d 353, 369-370 (S.D.N.Y. 1999) ("Plaintiff has provided no evidentiary support for his musings that Chief Ogden or others lied, and that the Chief and the Mayor doctored the hearing

transcript to cover up such lies.  However, plaintiff's factual allegations are irrelevant. Plaintiff has no claim for denial of due process because the availability of an Article 78 proceeding constitutes an adequate post-deprivation remedy for any of the alleged due process violations, or for all of them taken together.").

Rather, for the reasons set forth *infra* Point III.B, courts in this Circuit have held that regardless of the veracity of a plaintiff's allegations about witnesses lying in disciplinary hearings, the availability of an Article 78 special proceeding to challenge the disciplinary hearing more than satisfies Constitutional due process requirements.  *Johnston*, 562 F App'x at 40-41; *Birmingham,* 70 F. Supp. 2d at 369-370.

Finally, Defendants Hanson and Quinn did not personally deprive Plaintiff of any Constitutional due process right.  It is undisputed that the NYPD, not Defendants, made these decisions to suspend Plaintiff without pay pending disciplinary charges, as well as to adopt ADCT Adler's findings substantiating Plaintiff's charge of "misconduct" and recommending that Plaintiff forfeit eleven days already served on suspension.  *See* Shaffer Decl. Exs. Q-U. Defendants, as police officers, were not in a position to provide Plaintiff with any procedural process, of which he now claims to have been deprived.  As Plaintiff no longer has any claims against the City, or an individual decision maker with regard to Plaintiff's suspension, his denial of property interest claim is patently meritless.

## B.      Plaintiff Had An Adequate Post-Deprivation Remedy

Additionally, Plaintiff's due process claims must be dismissed because Plaintiff was provided with ample post-deprivation remedies to challenge his suspension without pay, including a grievance under the collective bargaining agreement or an Article 78 special proceeding in New York Supreme Court, neither of which Plaintiff availed himself.  The Second Circuit has recognized that where "a party sues the state and its officials and employees for the

arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate post deprivation remedy." *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (internal citation and quotation marks omitted).   This is true "even where deprivations of property occur as a result of established governmental procedures." *Johnston*, 562 F. App'x at 41 (quoting *Locurto*, 264 F.3d at 175.)   Indeed, in *Johnston*, plaintiff, a mechanic who was demoted by his municipal employer in response to disciplinary charges, claimed that he was deprived of a property interest in his position without due process because several employees lied at his disciplinary hearing.   *Id*. at 40.   The Court held[2] that plaintiff "received adequate process: He was afforded a pre-termination hearing at which he was represented by counsel and he was given the chance to put forth arguments and evidence as to why he should not be terminated.   Thereafter, he had the opportunity to avail himself of the review process pursuant to New York C.P.L.R. Article 78.   Even considering Johnston's claim that witnesses at the hearing lied, this is sufficient to satisfy the requirements of the Due Process Clause." *Id*. at 40-41.

Here, Plaintiff does not contend that the established state procedure for disciplining NYPD employees itself violated his due process rights but, rather, that the alleged acts of Defendants in purportedly lying during his GO-15 hearing and subsequent departmental trial, and Officer Derenze in purportedly misrepresenting who he represented prior to Plaintiff's GO-15 hearing, led to a deprivation of Plaintiff's due process rights.   First, Officer Derenze is no longer a defendant in this case.   Further, setting aside the wholly speculative nature of these

---

[2] The Court elected not to resolve the parties' dispute over "whether the deprivation occurred as a result of established governmental procedures or was based on random and unauthorized acts' by government officers," holding that even "assum[ing] this point in [plaintiff's] favor for purposes of this appeal," the pre-deprivation and post-deprivation process provided to Plaintiff was more than adequate to satisfy the requirements of the Due Process Clause. *Id.* at 40.

allegations, a witness' alleged dishonesty or perjury at an employee's disciplinary trial is a "random and unauthorized" act, for which the availability of a post-deprivation Article 78 proceeding provides sufficient due process to remedy.  *See Johnston*, 2013 U.S. Dist. LEXIS 40517, at *21, *aff'd* 562 F App'x at 40-41; *Birmingham*, 70 F. Supp. 2d at 369-370.

While Plaintiff apparently chose not to pursue an Article 78 proceeding, the availability of such a special proceeding as a post-deprivation remedy, further underscores that Plaintiff was not deprived of a property right without due process.  *Locurto,* 264 F.3d at 175. Plaintiff effectively seeks to re-litigate the underlying disciplinary trial and his suspension without pay, arguing that he should not have been suspended because Defendants purportedly lied about what happened during the traffic stop on March 4, 2016.  "A civil rights action, however, 'is not a means for litigating in a federal forum whether a state or local administrative decision was arbitrary and capricious.'"  *Herlihy v. City of New York*, 654 F App'x 40, 43 (2d Cir 2016) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 888 (2d Cir. 1987) ("it is the function of the federal courts to determine only whether the state has provided adequate avenues of redress to review and remedy arbitrary action").  Accordingly, for the reasons set forth above, Plaintiff's due process claim regarding a property interest in his continued employment should be dismissed.

## POINT IV

## PLAINTIFF WAS NOT DEPRIVED OF A LIBERTY INTEREST IN HIS REPUTATION WITHOUT DUE PROCESS

To prevail on a due process claim based upon the alleged deprivation of a liberty interest in one's reputation and good name, otherwise known as a "stigma-plus" claim, plaintiff must establish: (1) that defendants made false and stigmatizing statements about him; (2) the stigmatizing statements were made public; and (3) a tangible and material state-imposed burden

in close temporal proximity to the stigmatizing statement.  *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010); *Segal v. City of New York*, 459 F.3d 207, 212-213 (2d Cir. 2006).  Notably, the Second Circuit has made clear that "the deleterious effects which flow directly from a sullied reputation [are] normally . . . insufficient.  These would normally include the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation."  *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994).

A.       **Defendants' Statements Were Neither False Nor Stigmatizing**

First, Plaintiff fails to establish a cognizable stigma plus claim because none of the statements made by Defendants were sufficiently "stigmatizing" to Plaintiff's reputation, honor, or integrity.  The Supreme Court has noted that constitutionally damaging information is that which charges a petitioner with dishonesty or immorality, that which harms a person's reputation, honor, or integrity.  *See Roth*, 408 U.S. at 573 (citations omitted).  Courts routinely look to New York state defamation law to evaluate the "stigma" portion of a stigma plus claim. *See Sharpe v. City of New York*, 2013 U.S. Dist. LEXIS 75094 at *6 n. 10 (E.D.N.Y. May 29, 2013), *aff'd*, 560 F. App'x 78 (2d Cir. 2014); *Pisani v. Westchester County Health Care Corp.*, 424 F. Supp. 2d 710, 718 (S.D.N.Y. 2006) ("Establishing defamation in the § 1983 context is no different than under New York State law").

The New York Court of Appeals has defined defamation as "[m]aking a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace."  *Thomas H. v. Paul B.*, 18 N.Y.3d 580, 584 (2012).  Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" satisfy the stigma requirement.  *Segal*, 459 F.3d at 212 (quoting

*Donato v. Plainview-Old Bethpage Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996)).  However, "[s]tatement[s] that an employee poorly performed [his] duties or acted in an improper manner, or that describe behavior or actions that are within the employee's power to correct, do not generally qualify as stigma for constitutional purposes." *Adams v. N.Y. State Educ. Dep't,* 752 F. Supp. 2d 420, 449 (S.D.N.Y. 2010) (quotations and citations omitted).

In this case, Plaintiff's Complaint identifies five statements made by Defendants, which Plaintiff alleges were both false and stigmatizing: **(1)** "Plaintiff caused a scene and acted in an 'irate' manner" during the March 4, 2016, traffic stop; **(2)** "Plaintiff was yelling at the top of his lungs;" **(3)** Plaintiff "threaten[ed] defendants, saying in sum, that [Defendants] would be fucking sorry and that they don't know who they were messing with;" **(4)** "Plaintiff failed to comply with defendants' orders on more than one occasion…" and "repeatedly had to be directed to get back in his vehicle;" **(5)** "Plaintiff's irrational behavior caused a crowd to form." *See* ECF Dkt. No. 66 at ¶ 48 (and its subparts) (internal citations omitted).

Plaintiff cannot prove that the six statements by Defendant Hanson, as identified in the Second Amended Complaint were false.  As argued *supra* Point II, Plaintiff is collaterally estopped from contesting the factual determination of ADCT Adler that, on March 4, 2016, Plaintiff "did not produce his license and registration when asked, failed to immediately inform the officers that he was a member of service, and argued in a loud voice with the officers about their basis for pulling him over. Because of [Plaintiff's] conduct, what should have been a routine car stop needlessly escalated into a hostile confrontation between [Plaintiff] and the two officers."  *See* Shaffer Decl. Ex. Q at pp. 11-13 (bearing Bates Nos. D 00449-00451). Accordingly, Plaintiff is collaterally estopped from arguing that the statements in question were false.

Moreover, Plaintiff admitted during his GO-15 hearing that he raised his voice when speaking to Defendant Hanson on March 4, 2016.  *See* Def. 56.1 at ¶ 171.  Plaintiff admitted during his GO-15 hearing that he told officers he had lived in the neighborhood for years, was not aware of any sign prohibiting him from making a left turn at the intersection in question, and would go back to the intersection to see for himself whether the sign existed. Shaffer Decl. Ex. J at 13:12 – 14:19.  Plaintiff admitted during his GO-15 hearing that Defendants instructed him to return to his car at least twice.  *Id.* at 28:11-17.  Plaintiff admitted during his GO-15 hearing that he stated to Hanson that there was a crowd forming at the school approximately 20 meters away from the location of the March 4, 2016 car stop.  *Id.* at 14:21-15:1.  Thus, by his own admission, Plaintiff cannot prove that Defendant Hanson's statements in question were false.

Additionally, Defendants' statements that Plaintiff was acting "irate," yelling "at the top of his lungs," or behaving in an "irrational" manner are all statements of opinion, not fact, which cannot form the basis of a cognizable stigma plus claim.  "It is a settled rule that expressions of an opinion 'false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions.'"  *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286 (1986) (quoting *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 380 (1977), *cert. denied* 434 U.S. 969).  Thus, to the extent Plaintiff takes issue with Defendants' characterizations of his behavior as "irate" or "irrational," any such characterizations are subjective statements of opinion, not statements of fact capable of being proven false, and cannot form the basis of a cognizable stigma plus claim.  *See Oakley v. Dolan*, 2020 U.S. Dist. LEXIS 28267, at *22 (S.D.N.Y. Feb. 19, 2020) (dismissing defamation claim where "Defendants' statements referred to Oakley's behavior as being 'inappropriate' and 'abusive,' with Dolan stating that Oakley was

'physically and verbally abusive' and that he 'abused' many individuals at the February 8 game. However, 'abusive' is a subjective term that the New York courts have held to constitute a "nonactionable statement of opinion."); *see also Colantonio v. Mercy Med. Ctr.*, 73 A.D.3d 966, 969 (2d Dep't 2010) (dismissing defamation claims, as defendants' statements that "the plaintiff 'is belligerent and very unreasonable,' cannot be interacted with, is 'not stable' … is 'bizarre,' is 'inappropriate' and 'doesn't listen,'" were all expressions of opinion).  Therefore, Defendants' descriptions of Plaintiff's behavior as "irate" or "irrational," or the volume of Plaintiff's voice as yelling "at the top of his lungs" are all subjective statements of personal opinion, which cannot form the basis of a cognizable stigma plus claim.

Finally, even if Plaintiff were able to prove that the aforementioned statements were false, Defendants' statements that, in sum and substance, on one occasion on March 4, 2016, Plaintiff acted in a discourteous manner and failed to comply with orders to return to his vehicle, are not sufficiently stigmatizing to establish a stigma plus claim.  At most, Defendants statements accused Plaintiff of engaging in relatively minor violations of the NYPD's rules and regulations regarding employee conduct, which did not seriously impugn his character or reputation, and were well within Plaintiff's power to correct.  *See Adams,* 752 F. Supp. 2d at 449; *see also Donato*, 96 F.3d at 630; *Russell v. Hodges*, 470 F.2d 212, 217 (2d Cir. 1972). Accordingly, Plaintiff's stigma plus claim should be dismissed because Defendants did not make false or stigmatizing statements about Plaintiff during the underlying GO-15 hearings or disciplinary trial.

## B.    Defendants' Statements To The GO-15 Investigators Were Not Published

Moreover, any stigma plus claim based upon Defendants' statements at Plaintiff's GO-15 hearing must be dismissed because those statements were not publicly disseminated.  In asserting a § 1983 liberty interest claim, a plaintiff must demonstrate that the alleged defamatory

statement was sufficiently public to create or threaten a stigma.  *See O'Connor v Pierson*, 426

F.3d 187, 195-196 (2d Cir. 2005); *Donato v. Plainview-Old Bethpage Cent. School Dist.*, 96 F.3d

623, 631-632 (2d Cir. 1996); *see also Richardson v. Farina*, 2017 U.S. Dist. LEXIS 26280, at *6

(S.D.N.Y. Feb. 23, 2017) (dismissing plaintiff's stigma-plus claim because plaintiff did not

adequately allege that any potentially stigmatizing statement was disseminated publicly).

Here, Defendants' statements to GO-15 investigators cannot form the basis of a

cognizable stigma plus claim because they were confidential, and were made in a private, closed

proceeding.  Patrol Guide Section 206-13, which governs the interrogation of members of

service during official departmental investigations, states: "[t]he questions and answers resulting

from the interrogation conducted pursuant to this procedure are confidential.  They are not to be

revealed nor released to any person or agency outside the department <u>without</u> prior written

approval of the Deputy Commissioner – Legal Matters."  *See* Shaffer Decl. Ex. W at p. 3.

Plaintiff does not contend, nor is there any supporting evidence to suggest, that Defendants, or

any other member of the NYPD, publicly disseminated Defendants' confidential statements to

the GO-15 board.  The only individuals present when Defendants gave their statements to the

GO-15 board were the five NYPD supervisors on the board, Defendants, and union delegate

Officer Derenze.  *See* Def. 56.1 at ¶¶ 65-67, 107-108; *see also* Shaffer Decl. Exs. A-C, K.

To the extent Plaintiff argues that Defendants "published" a stigmatizing

statement about him by creating internal NYPD memoranda or records regarding the preliminary

investigation into the March 4, 2016 traffic stop, or Plaintiff's subsequent suspension without

pay pending disciplinary trial, such an argument plainly lacks merit.  The Second Circuit has

clearly held that an employer's creation of "an internal document circulated only within the"

employing government agency does not establish publication for the purposes of a stigma plus

claim.  *Brevot v. New York City Dept. of Educ.*, 299 F App'x 19, 21 (2d Cir. 2008).  Nor does the

NYPD's inter-agency communication, through its "Finest" message system, the mere fact that

Plaintiff was suspended, establish a cognizable stigma plus claim.  *See O'Connor,* 426 F.3d at

195 (negative inferences that might be drawn from plaintiff's suspension "not enough to make

out a stigma-plus claim"); *Pisani*, 424 F. Supp. 2d at 717 (S.D.N.Y. 2006) (court cannot "attach

a defamatory implication to a simple and truthful statement of termination").  Plaintiff plainly

fails to establish that Defendants publicized any statements about him, defamatory or otherwise.

Accordingly, for the reasons set forth above, Plaintiff's stigma plus claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an

order granting Defendants' motion for summary judgment and dismissing the Complaint in its

entirety, with prejudice, and awarding Defendants such other and further relief as the Court

deems just and proper.

Dated:         New York, New York
               August 27, 2020

JAMES E. JOHNSON
Corporation Counsel of the
   City of New York
Attorney for Defendants
100 Church Street, Room 2-125
New York, New York 10007-2601
(212) 356-1105
jshaffer@law.nyc.gov


By:     /s/ J. Kevin Shaffer
        J. Kevin Shaffer
        Assistant Corporation Counsel


Bruce Rosenbaum,
J. Kevin Shaffer,
   Of Counsel.