USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/12/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO DOLCINE,

Plaintiff,

-against-

POLICE OFFICER RICHARD HANSON and POLICE OFFICER KERIN DONAHUE,

Defendants.

17-CV-4835 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Ricardo Dolcine, a New York City Police Department ("NYPD") officer, seeks to hold Defendants Kerin Quinn[1] and Richard Hanson, fellow NYPD officers, liable for allegedly stigmatizing statements uttered in the wake of a traffic stop involving the parties. Plaintiff asserts a claim under the Fourteenth Amendment's Due Process Clause, contending that Defendants accused him of disobeying a lawful order, the effect of which was to deprive him of a protected liberty interest in his good name and reputation. While Plaintiff may have been personally affronted by Defendants' statements, Plaintiff fails entirely to demonstrate the existence of any genuine dispute of material fact concerning whether Defendants deprived him of a protected liberty interest without due process of law. For the following reasons, Defendants' motion for summary judgment is GRANTED.

[1] Ms. Quinn was erroneously sued as Kerin Donahue, as indicated in the caption. She will be referred to throughout this opinion as Kerin Quinn.

## BACKGROUND[2]

On March 4, 2016, Defendants conducted a traffic stop of Plaintiff for making an illegal turn; Plaintiff was off-duty and driving his personal vehicle.[3] Def. 56.1 Stmt. ¶¶ 16–19; Pl. 56.1 Resp. ¶¶ 16–19. A verbal altercation ensued between Defendants and Plaintiff; Plaintiff claims that Hanson yelled at him, and Defendants claim that Plaintiff yelled at them. Def. 56.1 Stmt. ¶¶ 30–31; Pl. 56.1 Resp. ¶¶ 30–31. At some point after Defendants had obtained Plaintiff's NYPD identification from him, Plaintiff exited his vehicle, walked toward Defendants' patrol car, and asked them to return his NYPD identification. Def. 56.1 Stmt. ¶¶ 33–34, 36–39; Pl. 56.1 Resp. ¶¶ 33–34, 36–39. Quinn told Plaintiff that they would not yet return his identification and that they were calling their sergeant; Quinn ordered Plaintiff to return to his vehicle. Def. 56.1 Stmt.

[2] All facts stated herein that are drawn from the parties' Local Civil Rule 56.1 Statements are undisputed unless otherwise noted. The Court will refer to the relevant submissions as follows: Defendants' Amended Local Rule 56.1(b) Statement of Undisputed Material Facts, Dkt. 112, as "Def. 56.1 Stmt."; Plaintiff's Amended Local Civil Rule 56.1(b) Counterstatement, Dkt. 116, as "Pl. 56.1 Resp."; Defendants' Response to Plaintiff's Local Civil Rule 56.1(b) Counterstatement, Dkt. 108, as "Def. 56.1 Reply"; Plaintiff's First Amended Complaint, Dkt. 24, as "FAC"; Plaintiff's Second Amended Complaint, Dkt. 66, as "SAC"; Defendants' Amended Memorandum of Law in support of their motion for summary judgment, Dkt. 113, as "Def. Mem."; Plaintiff's Amended Memorandum of Law in opposition to Defendants' motion for summary judgment, Dkt. 115, as "Pl. Mem."; Defendants' Reply Memorandum of Law in support of their motion for summary judgment, Dkt. 109, as "Def. Reply."

In Defendants' Amended Memorandum of Law in support of their motion, they "respectfully referred" the Court to their Rule 56.1 Statement of Undisputed Material Facts in lieu of providing a "Statement of Facts" in their Memorandum of Law. Doing so contravened Section 4(H)(ii) of the Court's Individual Practices, in that "56.1 Statements *may not* serve as a substitute for a statement of facts in a memorandum of law." (emphasis added). Although this non-compliance with the Court's rules does not necessitate denying Defendants' otherwise meritorious motion, Rule 56.1 Statements are intended to "streamline" motions for summary judgment, and the Court expects more from Defendants' counsel as a public servant and a repeat litigant before this court. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.").

[3] The parties had met previously. In February 2016, Defendants also pulled Plaintiff over while he was off-duty and driving his personal vehicle. Def. 56.1 Stmt. ¶¶ 3–5; Pl. 56.1 Resp. ¶¶ 3–5. Defendants assert that they pulled Plaintiff over because his tinted windows appeared to be in violation of New York's vehicle and traffic laws. Def. 56.1 Stmt. ¶ 7. Plaintiff alleges that Defendants stopped him because he is black. Pl. 56.1 Resp. ¶ 7. Defendants did not issue Plaintiff a citation in connection with the February 2016 traffic stop. Def. 56.1 Stmt. ¶ 15; Pl. 56.1 Resp. ¶ 15. While that encounter appears to have influenced Plaintiff's perception of the Defendants, it has no bearing on the current motion for summary judgment.

¶¶ 40–41; Pl. 56.1 Resp. ¶¶ 40–41. There is a dispute about what occurred next. Defendants contend that Plaintiff screamed at them and did not immediately obey their commands to return to his car, while Plaintiff maintains that he offered them his license and registration so that they could issue him a summons and complied with their instructions to return to his car after they refused to return his NYPD identification. *See* Def. 56.1 Stmt. ¶¶ 91–99, 128–132; Pl. 56.1 Resp. ¶¶ 162–168. The parties agree that after Plaintiff returned to his vehicle, Sergeant Tomeka Ruffin arrived at the scene and instructed the parties to go to the nearby 32nd Precinct. Def. 56.1 Stmt. ¶¶ 44–46; Pl. 56.1 Resp. ¶¶ 44–46.

Once Plaintiff arrived at the precinct, he spoke by telephone with his Lieutenant and union delegate from the 43rd Precinct, who informed him that another union delegate, Officer O'Dwyer, was coming to assist him. Def. 56.1 Stmt. ¶¶ 49–52; Pl. 56.1 Resp. ¶¶ 49–52. After those telephone calls, Plaintiff spoke to Officer Christopher Derenze, a union delegate for the 32nd Precinct, who identified himself as a union delegate and told Plaintiff that he was trying to "defuse the situation." Def. 56.1 Stmt. ¶¶ 52–54; Pl. 56.1 Resp. ¶¶ 52–54. Although Officer Derenze never purported to represent Plaintiff, Plaintiff assumed that he was acting as Plaintiff's union delegate because he told Plaintiff he sought to "de-escalate the situation." Def. 56.1 Stmt. ¶¶ 55–56; Pl. 56.1 Resp. ¶¶ 55–56. Notwithstanding that assumption, Plaintiff did not admit any wrongdoing to Officer Derenze. Def. 56.1 Stmt. ¶ 58; Pl. 56.1 Resp. ¶ 58. Defendants also spoke to Officer Derenze around the same time about what happened during the stop. Def. 56.1 Stmt. ¶¶ 244; Pl. 56.1 Resp. ¶ 244.

After these initial conversations and while still at the precinct, all three officers were formally interviewed under NYPD Patrol Guide Procedure 206-13 ("GO-15"). Def. 56.1 Stmt. ¶ 62; Pl. 56.1 Resp. ¶ 62. During their GO-15 interviews, Defendants were represented by Officer

Derenze. Def. 56.1 Stmt. ¶¶ 67, 108; Pl. 56.1 Resp. ¶¶ 67, 108. In addition to describing Plaintiff's demeanor and behavior throughout the traffic stop, Defendants both stated that Plaintiff did not immediately comply with their instructions to return to his vehicle after he had exited to seek the return of his NYPD identification. Def. 56.1 Stmt. ¶¶ 92–93, 129; Pl. 56.1 Resp. ¶¶ 92–93, 129.

After the GO-15 interviews, an NYPD Captain recommended that charges and specifications be preferred against Plaintiff for misconduct associated with the traffic stop. Def. 56.1 Stmt. ¶ 172; Pl. 56.1 Resp. ¶ 172. Pursuant to New York City Administrative Code § 14-123 and New York Civil Service Law § 75(3-a), the NYPD suspended Plaintiff for eleven days without pay, effective immediately, pending a final decision on the disciplinary charges. Def. 56.1 Stmt. ¶¶ 173, 175; Pl. 56.1 Resp. ¶¶ 173, 175. On March 15, 2016, Plaintiff returned to duty on modified assignment. Def. 56.1 Stmt. ¶ 176; Pl. 56.1 Resp. ¶ 176.

On May 2, 2016, Plaintiff was served with charges and specifications for his conduct during the March 4, 2016 stop. Def. 56.1 Stmt. ¶ 183; Pl. 56.1 Resp. ¶ 183. Plaintiff faced two charges: (1) being "discourteous to on-duty [officers] in that [Plaintiff] was belligerent and yelled expletives at the [officers]"; and (2) "fail[ing] and neglect[ing] to comply with the direction of on-duty [officers] relating to a traffic stop." Def. 56.1 Stmt. ¶¶ 180–181; Pl. 56.1 Resp. ¶¶ 180–181. Plaintiff's departmental trial, at which both Defendants testified, occurred in October and November 2016. Def. 56.1 Stmt. ¶¶ 184, 188; Pl. 56.1 Resp. ¶¶ 184, 188. At the trial, Plaintiff was represented by counsel, had the opportunity to present evidence, testify on his own behalf, call his own witnesses, and cross-examine NYPD's witnesses, including Defendants. *See* Def. 56.1 Stmt. ¶¶ 185–190; Pl. 56.1 Resp. ¶¶ 185–190. Following the disciplinary trial, Plaintiff was found guilty of discourtesy and not guilty of failure to obey a lawful order. Def.

56.1 Stmt. ¶¶ 285–286; Pl. 56.1 Resp. ¶¶ 285–286. The then-NYPD Commissioner adopted the findings and approved Plaintiff's punishment, pursuant to which he forfeited the eleven days he had served on pretrial suspension. Def. 56.1 Stmt. ¶¶ 287–290; Pl. 56.1 Resp. ¶¶ 287–290.

On June 27, 2017, Plaintiff, then *pro se*, commenced this action against Defendants Quinn and Hanson. *See* Complaint, Dkt. 1. After obtaining counsel, Plaintiff added as Defendants the City of New York City, Officer Derenze, Sergeant Ruffin, and multiple John and Jane Does, asserting due process violations, unlawful search and seizure under the Fourth Amendment, and bias-based policing under the New York City Administrative Code, among other claims. *See* FAC at ¶¶ 48–74. On June 25, 2019, the Court granted Defendants' motion to dismiss the due-process and *Monell* claims, thereby dismissing the City of New York as a Defendant. Order, Dkt. 61. The Court granted Plaintiff leave to file a Second Amended Complaint to amend his "due process claims for damage to his good name and reputation — his so called stigma-plus claim — and his due process claim that rests on his suspension without pay because of the alleged deceit of Derenze, Hanson and [Quinn] during the GO-15 and disciplinary hearing." *Id.* The Court warned, however, that "Plaintiff may not premise the ['plus'] element of his stigma-plus claim on his reassignment to [a less desirable unit], his inability to seek overtime, his placement on modified duty, or the loss of opportunities for promotion." June 25, 2019, Oral Arg. Tr. at 14–15, Dkt. 64.

On July 26, 2019, Plaintiff filed the SAC, dropping Officer Derenze as a defendant. *See* SAC, Dkt. 66. Plaintiff has since abandoned his Fourth Amendment and bias-based policing claims, resulting in a dismissal of Sergeant Ruffin and the Jane and John Doe Defendants. *See* Dkt. 97. During the course of briefing on this motion, Plaintiff also abandoned his property-

based due process claim. Pl. Mem. at 17. Accordingly, the only remaining claim is Plaintiff's stigma-plus claim against Defendants Hanson and Quinn.

**DISCUSSION**

**I. Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Smith v. County of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (per curiam) (cleaned up). That said, "to defeat summary judgment, 'a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 197 n.10 (2d Cir. 2014) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)).

**II. The Court Need Not Decide Whether Defendants Are Entitled to Absolute or Qualified Immunity**

As pled in the SAC, Plaintiff alleges that Defendants made stigmatizing statements during their GO-15 interviews and during the subsequent NYPD disciplinary trial. *See* SAC ¶ 48. Specifically, Plaintiff contends that, "*[d]uring both the GO-15 interview and the [NYPD disciplinary] trial*, [D]efendants lied, under color of law, when they falsely claimed that [Plaintiff] was, *inter alia*, very combative and disobeyed directions by the officers." *Id.*

(emphasis added); *see also id.* ¶ 61 (Plaintiff asserts that that Defendants "lied to investigators during a GO-15 interview as well as a subsequent trial.").

In moving for summary judgment, Defendants argue that they are entitled to absolute immunity for their statements during the GO-15 interviews and for their testimony at Plaintiff's subsequent NYPD disciplinary trial. *See* Def. Mem. at 5–7. In opposing Defendants' motion, Plaintiff seemingly concedes this point, which, based on the operative complaint, would appear to be the death knell for his case. *See* Pl. Mem. at 14 (stating that Plaintiff does not dispute that Defendants "are entitled to absolute immunity in connection with their sworn testimony"). Nevertheless, Plaintiff argues that whether Defendants are entitled to immunity for their sworn testimony is "irrelevant on these facts," because Defendants "admittedly communicated the allegations to others, including Officer Derenze, Sergeant Ruffin, and Captain Lynch, in non-testimonial and non-confidential settings" and because Defendants fabricated evidence. *Id.* at 14–15 (citing Pl. 56.1 Resp. ¶¶ 60, 127, 212, 216–217, 228, 234, 319). Plaintiff further argues that because Defendants lied during these non-testimonial statements and because it is "firmly established" that "a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer," even if Defendants would otherwise be entitled to absolute or qualified immunity for their testimonial statements, their lies and their non-testimonial statements negate any immunity to which they would otherwise be entitled. Pl. Mem. at 15–16 (quoting *Harris v. City of New York*, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016)).

To the extent Plaintiff did in fact concede Defendants' immunity for their testimonial statements, the only allegedly stigmatizing statements left on which Plaintiff could base his claim would be those made outside of Defendants' testimonial capacity. But Plaintiff's SAC is devoid of any allegations concerning Defendants' statements in such a setting. In essence, then,

Plaintiff is improperly attempting to amend his complaint for a third time in opposing summary judgment, without seeking leave of court. That is not permissible. *See* Fed. R. Civ. P. 15(b); *SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 531 (S.D.N.Y. 2018) (ruling that plaintiff "cannot now amend [its] complaint merely by raising new facts or theories in [its] briefs"); *Kizer v. Abercrombie & Fitch Co.*, No. 12-CV-5387, 2018 WL 6106853, at *2 (E.D.N.Y. Nov. 20, 2018) ("[A] party cannot amend their complaint simply by alleging new facts and theories in their [summary judgment] memoranda." (cleaned up)). Further, the Second Circuit has held that a district court does not abuse its discretion when it abstains from ruling on new theories of liability raised for the first time on summary judgment. *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010).

Plaintiff's arguments on immunity, however, are muddled, and there is at least some question whether Plaintiff intended to concede that Defendants have immunity for their testimonial statements. *See* Pl. Mem. at 14–16. While the Court agrees with Defendants that Plaintiff certainly appears to have conceded the point, ultimately it is unnecessary to wade into the immunity thicket because Plaintiff has not created a question of fact on the central question of whether his due process rights were violated by anything Defendants said.

## III. Plaintiff's Stigma-Plus Due Process Claim

Plaintiff has failed to establish the existence of a genuine dispute of material fact at each step of his stigma-plus claim, including: (1) whether Defendants' statements were stigmatizing; (2) whether Plaintiff suffered a sufficient "plus" to support a stigma-plus claim; (3) whether Defendants were in a position to deprive Plaintiff of his liberty interest or afford him the necessary process to safeguard against such a deprivation; and (4) whether Plaintiff received sufficient procedural due process to defeat an otherwise meritorious stigma-plus claim. Each

failure alone would merit summary judgment in favor of Defendants; together, these shortcomings leave no doubt that Plaintiff's claim must fail.

**A. Applicable Law**

The Due Process Clause of the Fourteenth Amendment prohibits a state actor from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Whereas "a person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause," loss of reputation can be a cognizable deprivation of a liberty interest when "coupled with the deprivation of a more tangible interest, such as government employment." *See Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004). An individual asserting such a claim is said to be pursuing a "stigma-plus" claim. *Id.*

To support a stigma-plus claim, a plaintiff must first prove the utterance of "stigmatizing statements about [him]—statements that call into question [the] plaintiff's 'good name, reputation, honor, or integrity.'" *Id.* (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980)); *see also Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (stating that stigma plus claim requires "utterance of a statement about [plaintiff] that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false" (cleaned up)). Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" satisfy the stigma requirement. *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630–31 (2d Cir. 1996). Next, "[the] plaintiff must prove these stigmatizing statements were made public." *Patterson*, 370 F.3d at 330 (citing *Abramson v. Pataki*, 278 F.3d 93, 101–02 (2d

Cir. 2002)); *see also Velez*, 401 F.3d at 87 ("The defamatory statement must be sufficiently public to create or threaten a stigma . . . ."). To satisfy the "plus" element of a stigma-plus claim, a plaintiff must prove "a specific and adverse action clearly restricting the plaintiff's liberty," such as the loss of employment or the termination or alteration of some other legal status or right. *Velez*, 401 F.3d at 87–88. The stigmatizing statements must be made concurrently with, or in close temporal relationship to, the tangible and material state-imposed burden. *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006). And, finally, the plaintiff must prove that the deprivation of his liberty interest occurred "without due process of law." *Id.*

**B. As a Matter of Law, Defendants' Statements Are Not Stigmatizing**

In the SAC, Plaintiff asserts that Defendants made a number of false statements about his behavior during the March 4, 2016 traffic stop. *See* SAC ¶ 48. In opposing Defendants' motion for summary judgment, however, Plaintiff narrowed his claim to the assertion that Defendants "published a stigmatizing allegation that [P]laintiff repeatedly disobeyed their direct, lawful orders." Pl. Mem. at 2; *see also id.* at 10 ("There is no dispute that [D]efendants Hanson and Quinn accused [P]laintiff of violating their purportedly direct, lawful orders during the March 4, 2016 traffic stop."). Accordingly, the Court understands Plaintiff to have abandoned any argument concerning all other allegedly stigmatizing statements. *See, e.g.*, *McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005) ("A[n] attorney must 'include his most cogent arguments in his opening brief, upon pain of otherwise finding them waived.'"). Plaintiff's stigma-plus claim thus rests entirely on Defendants' statements accusing Plaintiff of disobeying their orders.

In a stigma-plus claim, the allegedly stigmatizing statement must be false and capable of being proven false. *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004); *Brevot v. N.Y.C. Dep't of Educ.*, No. 04-CV-7959, 2007 WL 690130, at *4 (S.D.N.Y. Mar. 6, 2007). Federal courts often look to state substantive law of defamation in analyzing the "stigma" component of

a "stigma-plus" claim. *Paterno v. City of New York*, No. 17-CV-8278, 2018 WL 3632526, at *4 (S.D.N.Y. July 31, 2018) (citing *Sharpe v. City of New York*, No. 11-CV-5494, 2013 WL 2356063, at *6 n.10 (E.D.N.Y. May 29, 2013)). There is no dispute that, in the defamation context, statements of opinion are not actionable. *See, e.g.*, *Oakley v. Dolan*, No. 17-CV-6903 (RJS), 2020 WL 818920, at *8 (S.D.N.Y. Feb. 19, 2020), *rev'd in part*, 980 F.3d 279 (2d Cir. 2020), *and aff'd in part*, 833 F. App'x 896 (2d Cir. 2020) (dismissing defamation claim where "Defendants' statements referred to [the plaintiff]'s behavior as being 'inappropriate' and 'abusive,' with [a defendant] stating that [the plaintiff] was 'physically and verbally abusive' and that he 'abused' many individuals"); *Colantonio v. Mercy Med. Ctr.*, 73 A.D.3d 966, 968 (2d Dep't 2010) (dismissing defamation claims, because the defendants' statements that "the plaintiff 'is belligerent and very unreasonable,' cannot be interacted with, is 'not stable' … is 'bizarre,' is 'inappropriate' and 'doesn't listen'" were all expressions of opinion).

Defendants' statements that Plaintiff did not obey a lawful order are capable of being proven false.[4] Although there could be a question of fact whether Plaintiff actually disobeyed Defendants' orders, even if false, as a matter of law that statement is not stigmatizing. Plaintiff argues that the statement is "plainly stigmatizing" given his military background and "otherwise unblemished career in law enforcement." Pl. Mem. at 10. Plaintiff also asserts that the statement that he disobeyed a lawful order is analogous to an accusation that he violated Section 240.20(6) of New York's Penal Law. *Id.* at 12. The Court finds neither argument persuasive.

A stigmatizing statement is one that "call[s] into question [the] plaintiff's 'good name, reputation, honor, or integrity.'" *See Patterson*, 370 F.3d at 330. Courts, therefore, have found

[4] In contrast, other statements that Defendants made describing Plaintiff as "very irate," "yelling," "causing a scene," and giving [Defendants] a hard time," *see, e.g.*, Pl. 56.1 Stmt. ¶¶ 127, 212, 216–217, would not be capable of being proven false. Plaintiff has, however, abandoned any claim based on those statements.

that statements attacking an individual's professional competence can support a stigma-plus claim, given the likelihood that such statements would have a negative impact on that individual's future employment prospects. *See Donato*, 96 F.3d at 631 (deeming stigmatizing "strongly negative evaluations" of a supervisor's relevant skills, finding the statements to "read[] like a bill of indictment, methodically reciting a litany of lack of professional competence"). Here, however, Plaintiff can point to no such statements; at worst, Defendants accused Plaintiff of unruly behavior or poor judgment in a single instance when Plaintiff was off-duty as a police officer. This is not a case in which Plaintiff was accused of disobeying the orders of a superior in performing his job; such statements can carry a defamatory and stigmatizing meaning. *See Albert v. Loksen*, 239 F.3d 256, 267 (2d Cir. 2001) (finding that statements accusing hospital worker of "compromising the welfare of patients" and "disobeying orders from his superiors with respect to safety" were capable of a defamatory meaning). An accusation that Plaintiff "failed to comply with a lawful order" may constitute an allegation of a violation of NYPD rules and may lead to departmental charges and specifications, but it "does not go to the heart of [a police officer's] professional competence." *See Schlesinger v. N.Y.C. Transit Auth.*, No. 00-CIV-4759, 2001 WL 62868, at *4, *7 (S.D.N.Y. Jan. 24, 2001) (statements that accused the plaintiff, a manager for the New York City Transit Authority, of "intimidation, harassment, and abuse," as well as cursing and acting in a "belligerent" manner were not sufficiently stigmatizing to be actionable). While statements accusing Plaintiff of disobeying an order may have a particular sting for Plaintiff due to his status as a military veteran and police officer, Plaintiff fails to cite a single case to support his contention that Defendants' statements are necessarily stigmatizing due to his background. The closest Plaintiff comes is a citation to Justice Douglas's dissent in *Parker v. Levy* for the general proposition that obedience is an important virtue of the

military, but that fails to establish that Defendants' statements qualify as stigmatizing under the relevant standard. *See* 417 U.S. 733, 768 (1974) (Douglas, J., dissenting).

Further, while it is clearly established that charges of criminal conduct qualify as stigmatizing, *Quinn*, 613 F.2d at 446 n.4, "[a] statement that an employee . . . acted in an improper manner" generally does not qualify as stigmatizing for constitutional purposes, *LaForgia v. Davis*, No. 01-CV-7599, 2004 WL 2884524, at *8 (S.D.N.Y. Dec. 14, 2004). Here, Defendants' statements are much closer to accusing Plaintiff of acting in an "improper manner" than they are to accusing him of criminal conduct. Plaintiff's citation to *Patterson* is unavailing. In *Patterson*, a defendant accused the plaintiff of "taking kickbacks," "stealing," and "being a drug dealer." *See* 370 F.3d at 331. An accusation of a single incident of failing to comply with a lawful order pales in comparison. The Court is unconvinced that Defendants' statements accuse Plaintiff of any criminal conduct, and even if they had, the closest charge would be disorderly conduct, a "violation" under the New York Penal Code.[5]

In short, Plaintiff has failed to raise a genuine dispute of material fact as to whether Defendants' statement that he failed to obey their lawful order satisfies the "stigma" element of his claim. Accordingly, the Court finds that no reasonable jury would be able to find Defendants' statements were stigmatizing, and Defendants are entitled to judgment as a matter of law.[6]

---

[5] Section 240.20(6) of the New York Penal Law defines "disorderly conduct" as, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . congregat[ing] with other persons in a public place and refus[ing] to comply with a lawful order of the police to disperse." Thus, even if Defendants accused Plaintiff of failing to comply with their orders, this hardly satisfies the statutory definition of disorderly conduct as set out in the New York code.

[6] In moving for summary judgment, Defendants also argued that Plaintiff failed to raise a genuine dispute of material fact concerning the publication element of his stigma-plus claim. With respect to publication, Defendants argue that creating internal NYPD memoranda or records in connection with the preliminary investigation into the March 4, 2016, traffic stop, and in connection with Plaintiff's subsequent suspension do not satisfy this element.

### C. Plaintiff's Eleven-Day Suspension Without Pay Is Not a Sufficient "Plus"

Even if Plaintiff had established that a jury could conclude that Defendants' statements were stigmatizing, summary judgment for Defendants would still be appropriate. "Even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Sadallah*, 383 F.3d at 38. The state-imposed burden or alteration of status must be "*in addition to* the stigmatizing statement." *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001) (emphasis added). The Second Circuit has found deprivation of a plaintiff's property and termination of a plaintiff's government employment are both sufficient burdens to "satisfy the 'plus' prong" of a stigma-plus claim. *Sadallah*, 383 F.3d at 38. While it is "not entirely clear" what other state-imposed burdens would constitute an adequate "plus," *see DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003), several courts in this circuit have held that a suspension without pay is insufficient as a matter of law. *See e.g.*, *Lefebvre v. Morgan*, No. 14-CV-5322, 2016 WL 1274584, at *15 n.19 (S.D.N.Y. Mar. 31, 2016) (dismissing stigma-plus claim because a suspension without pay for a week "is not a sufficient burden or alteration as to satisfy the ['plus' requirement]); *Schlesinger*, 2001 WL 62868, at *7 (holding that a thirty-day suspension does not involve a deprivation of a right or status for purposes of establishing a protected liberty interest); *Komlosi v. Fudenberg*, No. 88-CV-1792, 2000 WL 351414, at *6 (S.D.N.Y. Mar. 31, 2000) ("As a matter of law . . . suspension without pay is not a sufficient

---

*See Brevot v. N.Y.C. Dep't of Educ.*, 299 F. App'x 19, 21 (2d Cir. 2008). Plaintiff argues that it is clear that Defendants' statements were documented in his personnel file, which satisfies the publication element of a stigma-plus claim. *See Segal*, 459 F.3d at 213; *Brandt v. Bd. of Coop. Educ. Servs., Third Supervisory Dist.*, 820 F.2d 41, 45 (2d Cir. 1987). Although Plaintiff's contention appears to have little (if any) factual support in the record, because the Court finds that Plaintiff is unable to demonstrate that Defendants' statements were stigmatizing, the Court need not determine on this motion whether Defendants would also be entitled to summary judgment because Plaintiff cannot prove publication.

'plus' factor to give rise to a protected liberty interest."). Plaintiff has cited no case in which a court has found otherwise.

Here, the Court previously ruled that Plaintiff could not premise the "plus" element of his claim on "his reassignment to [a less desirable unit], his inability to seek overtime, his placement on modified duty, or the loss of opportunities for promotion." June 25, 2019, Oral Arg. Tr. at 15 (citing *Boss v. Kelly*, 306 F. App'x 649, 651 (2d Cir. 2009) ("[A]ny negative impact on [a police officer's] work assignment, his ability to earn a promotion, or his ability to earn overtime do not alter a legal right or status.")). Accordingly, Plaintiff is left to rely solely on his eleven-day suspension without pay. Agreeing with other courts that have considered the issue, this Court finds that Plaintiff's suspension without pay is an insufficient "plus" to support his claim; accordingly, Plaintiff cannot demonstrate that he sustained the requisite material state-imposed burden or alteration of status necessary to prove his case. *See Sadallah*, 383 F.3d at 38. Absent any plus, Defendants are entitled to judgment as a matter of law on Plaintiff's stigma-plus claim.

**D. Defendants Cannot Be Liable for Any "Plus"**

Even if Plaintiff had established a stigmatizing statement and even if Plaintiff's eleven-day suspension were a sufficient "plus," Defendants, as individual police officers, were not in a position to deprive Plaintiff of any due process liberty interest and, therefore, cannot be liable for any such deprivation. In *Velez*, the Second Circuit held that "perfect parity in the origin of both the 'stigma' and the 'plus' is not required to state the infringement of a 'stigma-plus' liberty interest." *See* 401 F.3d at 89. While in most situations, the actor imposing the stigma will be the same as the actor imposing the plus, the *Velez* court found that the stigma and plus need not originate from the same actor, but instead must simply be "sufficiently proximate." *See id.* This proximity exists where "(1) the stigma and plus would, to a reasonable observer, appear connected—for example, due to their order of occurrence, or their origin—and (2) the actor

imposing the plus adopted (explicitly or implicitly) those statements in doing so." *Id.* (internal citations omitted).

Although *Velez* allows for the stigma and plus to come from different sources, *Velez* also held that a defendant who lacks the authority to effectuate the deprivation of a protected interest or to provide the plaintiff adequate process in connection with the alleged deprivation cannot be held liable for any deprivation. *See id.* at 93 (relieving of liability for stigma-plus claims those who made allegedly stigmatizing statements and those who investigated statements because "none of [them] had the power to provide process"). It is not enough, then, for a defendant to have made the allegedly stigmatizing statements; in order to be liable, the defendant must have also been in a position to impose the "plus" and to deprive the plaintiff of his or her due process rights.

Plaintiff alleges that Defendants are the source of the stigmatizing statements, *see* Pl. Mem. at 7–10, but Defendants did not impose any "plus" or have any role in shaping — or even the authority to shape — the process Plaintiff was provided before or after he was suspended. As individual officers with no authority over or supervision of Plaintiff, Defendants "could order neither [the] pre-removal review nor post-removal remedies" that due process required, and they "had no legal authority to bring about [Plaintiff's suspension]." *Velez*, 401 F.3d at 93; *see also Walker v. Fitzpatrick*, 814 F. App'x 620, 625 (2d Cir. 2020) (defendants who made stigmatizing statements, but had neither the power to provide process nor the power to inflict the deprivation could not be liable on "stigma-plus" claims); *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 270 (S.D.N.Y. 2006) ("[A]lthough [defendant] was the source of the stigmatizing statements, he is not alleged to have imposed the 'plus' of termination, nor is he alleged to have had any role in shaping or authority to shape the process [the plaintiff] was provided before he

was fired.”). Under clearly established precedent, then, even assuming those within the NYPD who had the authority to impose Plaintiff’s suspension and to afford him the requisite pre- and post-deprivation procedures adopted Defendants’ allegedly stigmatizing statements, Defendants themselves cannot be held liable, absent more. Because Plaintiff has failed to raise a genuine dispute of material fact concerning Defendants’ involvement in imposing Plaintiff’s suspension or their authority to provide him adequate process, Defendants are entitled to summary judgment on Plaintiff’s stigma-plus claim.

**E. Plaintiff Received All the Process He Was Due**

Stigma-plus is “a species within the phylum of procedural due process claims;” for that reason, a plaintiff must demonstrate that his liberty interest was deprived without due process of law. *Segal*, 459 F.3d at 213; *see also, e.g.*, *DiBlasio*, 344 F.3d at 302 (“‘Stigma plus’ refers to a claim brought for injury to one’s reputation (the stigma) coupled with the deprivation of some ‘tangible interest’ . . . (the plus), *without adequate process*.” (emphasis added)). Putting aside all of the other shortcomings of Plaintiff’s case, he has utterly failed to raise a dispute of material fact whether he received due process.

In the employment context, a pre-termination hearing “need not be elaborate;” the plaintiff must merely receive “notice and an opportunity to respond.” *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). As for any post-deprivation process, it is well-settled that the procedural requirements of Section 75 of the New York Civil Service Law, accompanied by the availability of a post-deprivation Article 78 proceeding, are adequate to satisfy constitutional due process requirements. *See Locurto v. Safir*, 264 F.3d 154, 173–75 (2d Cir. 2001); *Longo v. Suffolk Cnty. Police Dept.*, 429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006) (“Courts in this circuit . . . have held, clearly and repeatedly, that the combination of Section 75 and 78 provide a terminated public employee with remedies that are consistent with the requirements of the due process

clause of the Constitution."). When a plaintiff "could have availed [himself] of adequate post-deprivation remedies but failed to do so," courts readily dismiss plaintiffs' stigma-plus claims. *Felton v. Katonah Lewisboro Sch. Dist.*, No. 08–CV–9340, 2009 WL 2223853, at *7 (S.D.N.Y. July 27, 2009).

There can be no dispute that Plaintiff received adequate pre-deprivation process, having received both notice and an opportunity to respond in the form of the GO-15 interview and subsequent disciplinary trial. Not only did Plaintiff receive adequate process, but, with respect to the charge that he disobeyed a lawful order, the process worked — he succeeded in clearing his name at the disciplinary trial.[7] *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 n.12 (1972) ("The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons.").

Nevertheless, Plaintiff argues that the process was inadequate for two reasons. First, before the GO-15 interviews, Officer Derenze separately spoke to Defendants and Plaintiff about the incident in question and allegedly misrepresented to Plaintiff that he was Plaintiff's union delegate. *See* Pl. Mem. at 10. As a result, Plaintiff claims to have confided in Officer Derenze, leading to questioning during the GO-15 interview that was "specific in nature." *See id.* Second, Plaintiff argues that Defendants' intentional misstatements during their GO-15 interviews and during the disciplinary trial "sullied [their] impartiality." *See id.* at 11. The Court is unpersuaded by either of Plaintiff's arguments.

[7] As Plaintiff notes, the fact that he prevailed in the disciplinary trial on the charge that he disobeyed direct orders renders irrelevant whether he pursued an Article 78 proceeding. *See* Pl. Mem. at 13. But in the same breath, Plaintiff also acknowledges that his stigma-plus claim is premised entirely on the charge of disobeying lawful orders. *Id.* This should seemingly end the inquiry as to whether he received adequate process and whether the stigmatizing statements resulted in any "plus" that would support a claim that Plaintiff's Fourteenth Amendment due process rights were violated.

Plaintiff offers neither authority nor logic to demonstrate how "specific questioning" during the GO-15 interview negated the adequacy of the process he received. By Plaintiff's own account, he was a "perfect gentleman" during his encounter with Defendants and told Officer Derenze as much prior to his GO-15 interview. *See* June 25, 2019, Oral Arg. Tr. at 18. Plaintiff does not assert that he revealed anything incriminating when talking to Derenze. Accordingly, the Court cannot conceive of a plausible theory pursuant to which Plaintiff's discussion with Officer Derenze, under allegedly deceitful circumstances which led to specific questions during the GO-15 interview, could in any way have tarnished the impartiality of the GO-15 interview or otherwise rendered inadequate his pre-deprivation process.

Similarly, whether Defendants lied during either their GO-15 interviews or the departmental trial does not negate the adequacy of the process Plaintiff received; he was afforded a pre-termination hearing that resembled a judicial trial and could avail himself of an Article 78 proceeding to challenge any deprivation he suffered. *See Johnston v. Town of Orangetown*, 562 F. App'x 39, 40–41 (2d Cir. 2014) (holding that a plaintiff afforded similar procedures received due process even considering his claim that witnesses lied at a pre-deprivation hearing). As the Court warned Plaintiff when deciding Defendants' motion to dismiss, if Plaintiff's theory were correct, "any time there is a swearing match at the disciplinary hearing stage and the administrative judge resolves the credibility dispute in favor of disciplining an officer, that officer has a federal due process claim." *See* June 25, 2019 Oral Arg. Tr. at 17–18. Such a theory has no basis in the law.

Accordingly, Plaintiff received all the process he was due, which defeats any stigma-plus claim he may have had. Indeed, the process was not just legally sufficient — it achieved Plaintiff's goal of clearing him of the charge that he disobeyed lawful orders.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate all open motions and to close this case.

**SO ORDERED.**

**Date: March 12, 2021**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**